ROLLINS INTERNATIONAL, INC., a Delaware corporation, and International Bulk Distribution Corp., a Delaware corporation, Plaintiffs,

v.

INTERNATIONAL HYDRONICS CORPORATION, a Delaware corporation, Defendant.

Court of Chancery of Delaware, New Castle.

Aug. 18, 1972.

David A. Drexler and William H. Sudell, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiffs.

H. James Conaway, Jr., and Edward B. Maxwell, 2nd, of Young, Conaway, Stargatt & Taylor, Wilmington, for defendant.

DUFFY, Chancellor:

This is the decision on the motion of plaintiff Rollins International, Inc. (Rollins) to dismiss the amended counterclaim (third cause of action) of defendant International Hydronics Corporation (Hydronics). In the briefing Rollins opposed the filing of the amendment but at oral argument that opposition was withdrawn and Rollins concentrated its attack on the merits of the amendment. Compare E. M. Fleischmann Lbr. Corp. v. Resources Corp. Int., 34 Del.Ch. 509, 106 A.2d 205 (1954). Accordingly, the amendment will be docketed as a pleading and I regard Rollins' motion as one to dismiss for lack of jurisdiction over the subject matter.

A.

The third cause of action asks for declaratory relief, and it is undisputed that an actual controversy must be alleged to confer subject matter jurisdiction on the Court. Stabler v. Ramsay, 32 Del.Ch. 547, 88 A.2d 546 (1952). The precise issue is thus whether Hydronics has stated an actual controversy under the Declaratory Judgment Act, 10 Del.C. § 6501.

The case concerns certain agreements between the parties whereby Hydronics promised not to divulge to any person engaged in the business of furnishing industrial waste disposal services any technical know-how which was supplied to it by Rollins-Purle or by Purle Brothers Holdings, Ltd. (Purle). Hydronics seeks a declaration that it has not acquired any such know-how and that, in any event, the agreements are void and unenforceable as unreasonable restraints and against public policy. Hydronics does not allege that it intends to disclose such know-how in a specific instance to any specific person, nor does it state that it has any general intent to do so. Rollins asserts that Hydronics' omission in this regard is fatal because a mere disagreement between parties as to the terms of an agreement, absent an intention to act in the face thereof, does not present an actual controversy. In short, Rollins argues that Hydronics has not demonstrated that it is in peril because of the disagreement.

The first consideration is the record on which the motion is to be decided. Hydronics contends that the record created in the processing of plaintiff's complaint, which has been voluntarily dismissed, establishes the existence of an actual controversy. But Rollins says that the Court may not look to the earlier record but must test the pleading by what is alleged on its face.

The existence of an actual controversy between the parties is a jurisdictional requirement and, in search of this,

the Court may look outside the pleadings and consider both affidavits and depositions. 2A Moore's Federal Practice, § 12.-14. And see Wilmington Manor v. Grant, 34 Del.Ch. 487, 105 A.2d 783 (1954), in which this Court found that plaintiff's pleading stated an actual controversy but, after looking at its answers to interrogatories, held that there was no controversy. Following that approach I have considered the previous record in this case and the affidavit of Robert B. Bruns in deciding the motion.

The terms of the agreements prohibit Hydronics from disclosing "any—technical know-how which was originally supplied to it by Rollins-Purle or Purle Brothers Holdings, Ltd." to any person or corporation "which is engaged in a business substantially similar to the business of R–P (that of furnishing industrial waste disposal services to others)." The Bruns affidavit describes the nature of Hydronics' business as "the development and design of systems and processes useful in pollution abatement, particularly industrial waste treatment" and the rendering of "engineering advice and services in connection therewith." In other words, Hydronics' business is the dispensation of technical know-how in regard to industrial waste treatment, which is precisely the activity on which the agreements set certain limits. If the agreements are enforceable, then Hydronics, in the course of its ordinary business operations, is in danger of rendering itself liable to Rollins for damages if it should divulge know-how covered by the agreements. Because Hydronics claims not to have acquired any such know-how, and professes not to know upon which particulars of its expertise Rollins might found a claim, it is forced to act at its peril until some putative breach gives rise to litigation.

The complaint was dismissed without prejudice by stipulation, after the Court filed its opinion dated April 12, 1971. Paragraph 13 thereof is limited to one proposed plant (at Lake Calument) but paragraph 12 charges Hydronics generally with an unlawful plan to furnish trade secrets to Hyon Services, Inc., for the purpose of enabling it to engage in a business substantially similar to that of Rollins-Purle, i. e. furnishing of industrial waste disposal services. A reasonable inference from the complaint is that Rollins regarded Hydronics as having acquired trade secrets which it is prohibited from divulging to third persons and, when Rollins thought this was to be done, it commenced this action.

■ As Justice Herrmann said in Diebold Computer Leas., Inc. v. Commercial Cr. Corp., Del.Supr., 267 A.2d 586 (1970):

> "The basic purpose of the Declaratory Judgment Act is to enable the courts to adjudicate a controversy prior to the time when a remedy is traditionally available and, thus, to advance [the] stage at which a matter is traditionally justiciable."

Given that purpose and the somewhat special circumstances shown here, a liberal reading of the statute is in order.

■ The third party complaint, the affidavit and the prior pleadings, taken together, state an actual controversy prior to the time where a remedy would be traditionally available. This Court therefore has subject matter jurisdiction of the third cause of action.

I should make it clear that in denying plaintiff's motion the Court is not saying that it will necessarily determine the status under the agreements of the entire range of knowledge which Hydronics may have. Pre-trial proceedings should, in the usual way, determine wherein there are critical issues of fact to be decided. At present, the Court determines only that there is an actual controversy for jurisdictional purposes.

## B.

Rollins argues also that Purle is an indispensable party to the third cause of ac-

tion and joinder is required under Chancery Rule 19, Del.C.Ann., (which is the same as Rule 19 of the Federal Rules of Civil Procedure).

■ Rule 19(a) is concerned with a "person who is subject to service of process" and, since Purle is an English corporation, joinder under this paragraph is not feasible (absent a showing by Rollins to the contrary).

Rule 19(b) is concerned with instances in which a person may not be joined under 19(a) and it instructs the Court to determine whether in "equity and good conscience" the action should proceed; the following criteria are specified:

> " . . . first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."

■ Purle is not a party to either of the agreements, nor does it appear that Purle was intended to be a third party beneficiary with an enforceable interest in them. The agreements do not provide for any notice of any kind to Purle. Thus, whatever rights Purle may have in protecting its know-how lie outside of the agreements at issue here and, as I see it, they will not be prejudiced by an adjudication of the rights between Rollins and Hydronics in relation to those agreements. And since the basis of the controversy lies in the contracts between the parties who are before the Court, there is no reason to conclude that a judgment rendered in Purle's absence will be inadequate. In addition, if the action were dismissed for nonjoinder, Hydronics would probably be without an adequate remedy for having its contract rights and duties, *vis-a-vis* Rollins, determined.

Elster v. American Airlines, 34 Del.Ch. 500, 106 A.2d 202 (1954), on which Rollins relies, is not apposite. There, an injunction prohibiting the defendant corporation from honoring certain stock options would have directly affected the interests of the optionees, who were therefore held to be indispensable parties. An adjudication here would have no such effect upon Purle's rights. And I find nothing in Latrobe Electric Steel Co. v. Vascoloy-Ramet Corp., 56 F.Supp. 37 (D.Del.1944), which suggests a contrary result. In that case the court held that because the plaintiff did not ask for a finding that it was not utilizing any of a non-party's secrets (i. e. Fansteel), the latter's interests were severable and would not be prejudiced by the action; Fansteel was not an indispensable party. Rollins cites the case as authority for the converse proposition, that is, since Hydronics does ask this Court to find that it has acquired no technical know-how from Purle, the latter's interests are not severable and it is therefore an indispensable party. But Hydronics' rights and duties are based upon the contracts with Rollins and those are at the heart of the controversy. There is nothing to show that Hydronics has any controversy, or even a dispute, with Purle. The latter's rights may be incidental to this action; they are not indispensable.

Order on notice.