**ROLLINS INTERNATIONAL, INC., a corporation of the State of Delaware and International Bulk Distribution Corp., a corporation of the State of Delaware, Plaintiffs Below, Appellants,**

**v.**

**INTERNATIONAL HYDRONICS CORP., a corporation of the State of Delaware, Defendant Below, Appellee.**

Supreme Court of Delaware.

March 13, 1973.

CAREY and HERRMANN, JJ., and CHRISTIE, Judge sitting.

David A. Drexler, and William H. Sudell, Jr., Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiffs below, appellants.

H. James Conaway, Jr., and Edward B. Maxwell, 2nd, Young, Conaway, Stargatt & Taylor, Wilmington, for defendant below, appellee.

CHRISTIE, Judge.

This is an appeal from a decision of the Court of Chancery denying a motion to dismiss a counterclaim. Plaintiffs below, appellants Rollins International, Inc. and International Bulk Distribution Corp. (hereafter referred to collectively as "Rollins"), initially sought an injunction against defendant below, appellee, International Hydronics Corporation ("Hydronics"), from disclosing certain specialized knowledge, technical know-how and trade secrets allegedly acquired from Rollins-Purle, Inc., a subsidiary of Rollins International, Inc., and from Purle Brothers Holdings, Ltd., an English corporation, to Hyon Services, Inc., an Illinois Corporation which is a wholly owned subsidiary of Hydronics, or to any other person or firm. Such disclosure was alleged to be in breach of two agreements, one dated November 25, 1968, between Hydronics and the predecessor of International Bulk Distribution Corp. (The Matlack Corporation), and the other dated August 4, 1970, between Hydronics and Rollins International, Inc., whereby Hydronics promised not to divulge to any person engaged in the business of furnishing industrial waste disposal services any technical know-how which had been supplied to it by Rollins-Purle, Inc. or Purle Brothers Holdings, Ltd. Plaintiffs below also sought compensatory and punitive damages for any breach of the agreements by Hydronics.

Hydronics, in its answer, denied any breach of the agreements and averred that no technical know-how, specialized knowledge, or trade secrets were ever acquired by Hydronics from or at the expense of Rollins-Purle, Inc. or Purle Brothers Holdings, Ltd. Hydronics further averred that the paragraphs containing the agreements not to disclose were void and unenforceable as an unreasonable restraint upon trade and commerce because of the agreements'

geographical extent and duration and the undue burden they placed upon defendant because of their unreasonable scope and their effect upon defendant and upon the public. Hydronics also filed a counter-claim for malicious prosecution and for monies it said were due it from Rollins-Purle, Inc. for work and services perform-ed by Hydronics.

Thereafter, upon a stipulation by Hy-dronics and Hyon that Hyon was bound by the non-disclosure provisions of the agree-ments, plaintiffs below agreed to dismiss the action without prejudice. A stipulation to this effect was filed on May 7, 1971. The stipulation further provided, however, that Hydronics' counterclaim for malicious prosecution would remain pending.

On April 7, 1972, Hydronics filed a mo-tion to amend its pending counterclaim. By the amendment, Hydronics sought a declaratory judgment to declare that it has no present duty to Rollins under the non-disclosure paragraphs of the agreements, that the paragraphs are void and unen-forceable, and that Hydronics acquired no specialized knowledge, technical know-how or trade secrets within the meaning of these paragraphs. Rollins opposed Hy-dronics' motion to amend and moved to dis-miss. The Chancellor denied Rollins mo-tion to dismiss the amended counterclaim. See Rollins International, Inc. v. Interna-tional Hydronics Corp., Del.Ch., 295 A.2d 592 (1972). It is to be noted that the Chancellor's decision amounted to a deci-sion on motion for summary judgment since matters of record outside the plead-ings were considered, but the decision was limited to the jurisdictional issue.

The appeal to this Court followed the Chancellor's decision.

As the basis of the appeal it is argued that no "actual controversy" is alleged in the counterclaim to form the basis for ju-risdiction in a declaratory judgment action. The sole issue before this Court is wheth-er Hydronics has stated an "actual contro-versy" within the meaning of the Declara-tory Judgment Act, 10 Del.C. § 6501.

Rollins contends in effect that a party, in order to be entitled to seek declaratory relief, must point to some specific act or course of action which a party intends to follow and as to which suit is threatened.

Rollins also argues that the stipulation of dismissal without prejudice of the suit as initially brought ended the entire con-troversy therein, and that the former dis-pute cannot form the basis of an "actual controversy" in the asserted counterclaim.

■ As noted by this Court in a pre-vious opinion, the basic purpose of the Declaratory Judgment Act is to enable the courts to adjudicate a controversy prior to the time when a remedy is traditionally available and, thus, to advance the stage at which a matter is traditionally justiciable. See Diebold Computer Leasing, Inc. v. Commercial Credit Corp., Del.Supr., 267 A. 2d 586, 591–592 (1970). It follows that the Declaratory Judgment Act is remedial in character and that the term "actual contro-versy" should be liberally interpreted to give wide scope to the provisions of the act within the purposes thereof. While it is true that courts will not entertain suits seeking an advisory opinion or an adjudi-cation of hypothetical questions, the courts do entertain declaratory judgment actions where the alleged facts are such that a true dispute exists and eventual litigation ap-pears to be unavoidable. See Stabler v. Ramsay, 32 Del.Ch. 547, 555, 88 A.2d 546, 550 (Del.Supr.1952).

■ We approve the prerequisites of an "actual controversy" spelled out in Mar-shall v. Hill, 8 Terry 478, 481, 93 A.2d 524, 525 (Del.Super.1952): (1) It must be a controversy involving the rights or other legal relations of the party seeking delara-tory relief; (2) it must be a controversy in which the claim of right or other legal interest is asserted against one who has an interest in contesting the claim; (3) the controversy must be between parties whose

interests are real and adverse; (4) the issue involved in the controversy must be ripe for judicial determination.

■ We are of the opinion that the present controversy meets the tests to be applied in determining whether an actual controversy exists. Hydronics' business continues to be the dispensation of technical know-how in regard to industrial waste treatment. This is precisely the activity on which the non-disclosure paragraphs of the agreements set certain limits. Although Hydronics did not allege any specific intent to disclose such know-how, it is clear that 1) Hydronics claims that the paragraphs are void and that it never acquired any such know-how, 2) Hydronics intends to continue its business and, therefore, will continue to dispense technical know-how in regard to industrial waste treatment, and 3) Rollins contends that the paragraphs are valid and that Hydronics acquired technical know-how which it has promised not to reveal. Under such circumstances, a sufficient general intent to act may be inferred, and it is reasonably clear that further litigation is probable. Under the special circumstances here present to say that Hydronics must act at its peril until Rollins sees fit to assert a second suit would be to unduly limit the scope of the Declaratory Judgment Act.

We are of the opinion that an actual controversy sufficient to support a declaratory judgment action is shown to have existed at the time of the filing of the initial complaint by Rollins and that the intervening dismissal of the initial cause of action by Rollins did not end the basic controversy.

■ It must be noted that the complaint asserted a "general" charge of breach of the two agreements and sought an injunction against further disclosure of specialized knowledge, technical know-how and trade secrets to Hyon or to "any other person or firm". Such a general charge entitled Hydronics by its answer and counterclaim to put in issue the questions of whether the non-disclosure paragraphs of the agreements are valid and whether Hydronics had acquired specialized knowledge, technical know-how or trade secrets within the meaning of these paragraphs.

There was not only a complaint and answer but also a counterclaim. Although the stipulation of the parties removed from litigation for the time being at least the immediate special issues raised in the complaint and answer, it was not a final settlement of all issues between the parties or an agreement not to litigate any issue. It did not even appear to dispose of the general issues raised in the complaint and taken up in the amended counterclaim.

The basic dispute clearly went and continues to go beyond the particular claim of breach by disclosure to Hyon and included and appears to continue to include charges of breach by disclosure to others yet unknown to plaintiffs as to which an injunction was sought and as to which injunctions are very likely to be sought in the future.

It may be noted, however, that the holding of this Court does not make declaratory relief instantly available to any party to a contract upon a mere allegation that a term of the contract may be subject to some future significant difference of opinion. This Court goes no further than to hold that a sufficient state of facts has been alleged in the present instance so as to prevent the questions raised by Hydronics' counterclaim from being classified as hypothetical.

In ruling that an "actual controversy" exists this Court holds only that at this stage of the proceedings there appears to be an "actual controversy" within the meaning of the Declaratory Judgment Act, 10 Del.C. § 6501, for jurisdictional purposes. If further pretrial proceedings reveal that the issues do not have the substance they now appear to have and that the issues are merely hypothetical, a general motion for summary judgment may be considered by the Court of Chancery.

The decision of the Chancery Court is affirmed.