W.B. Dixon STROUD, Jr., Morris W. Stroud, Agnes S. Peelle, and Anne S. Bradford, Plaintiffs Below, Appellants,

v.

MILLIKEN ENTERPRISES, INC., a Delaware corporation, Dr. George C. Dacey, Dr. T.J. Malone, Roger Milliken, H.W. Jockers, Dr. H. Keith Brodie, Minot K. Milliken, F.G. Rodgers, J. Peter Grace, Rene C. McPherson, and Gerrish Milliken, Defendants Below, Appellees.

Supreme Court of Delaware.

Submitted at Oral Argument: Sept. 13, 1988.
Resubmitted on Supplemental Briefing: Oct. 19, 1988.
Decided: Jan. 12, 1989.

William Prickett (argued), Michael Hanrahan, and Philip B. Obbard, of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for appellants.

Andrew B. Kirkpatrick, Jr. (argued), Andrew M. Johnson, and Mary B. Graham, of Morris, Nichols, Arsht & Tunnell, Wilmington, for appellee Milliken Enterprises, Inc.

David A. Jenkins, and Clark W. Furlow, of Lassen Smith Katzenstein & Furlow, Wilmington, for Individual appellees.

Before HORSEY, MOORE and WALSH, JJ.

HORSEY, Justice:

Following briefing and oral argument on September 13, 1988 on the merits of this appeal from a decision and order of the Court of Chancery, this Court issued a notice to show cause, by Order dated September 22, 1988. The Order directed the shareholder plaintiffs of Milliken Enterprises, Inc. ("Milliken"), a Delaware corporation, to show cause why the appeal should not be dismissed on alternate grounds: that the matter at issue does not involve an actual case or controversy; or, that the parties improperly seek an advisory opinion; or, that the appeal is taken from an interlocutory order without compliance with Supreme Court Rule 42(c) and (d). These issues were raised *sua sponte* by the Court at oral argument and were the subject of an exchange of supplemental memoranda by the parties. For the reasons which follow, we find the Court of Chancery to have rendered an advisory opinion and, accordingly, we dismiss the appeal.

I

Milliken, asserted to be one of the world's largest textile companies with assets of approximately $2 billion, is a privately-held corporation having approximately two hundred shareholders, all of whom are descendants of the company's founder, Seth Milliken. Plaintiffs are Milliken descendants who are not involved in the management of the company and own approximately 15% of Milliken's stock. The defendant Board of Directors of Milliken (the "board") consists of nine members. Five members of the board do not hold stock in Milliken and range from the president of Duke University to officers and directors of other major corporations. The four remaining directors are officers of the corporation, three of whom are family members—Roger Milliken (chairman of the board), Minot Milliken (vice-president and assistant secretary), Gerrish Milliken (vice-president) and Dr. Thomas J. Malone (president of Milliken). The three family members own or control over 50% of Milliken's common and preferred stock.

On April 15, 1987, plaintiffs filed suit to enjoin the holding of Milliken's annual stockholders' meeting on April 28, 1987 in Wilmington, Delaware. Their complaint (as well as later amendments) raises matters of corporate governance, asserted by way of both individual and derivative claims.

The original complaint focused on the Notice of the annual stockholders' meeting and proxy materials, which plaintiffs had received in early April from Milliken's management. The original complaint charged that Milliken's directors had breached their fiduciary duty to the stockholders by issuing a Notice which was incomplete, misleading, and lacking in complete candor. The complaint attacked proposed charter and bylaw amendments adopted by the board as being invalid as a matter of law and designed to entrench present management. The complaint also alleged that the proxy materials attached to the Notice were misleading. Plaintiffs asked the Court to issue a temporary restraining order forbidding the holding of the meeting and to declare that the bylaw and charter amendments were illegal.

On April 23, 1987, the Court of Chancery issued an order temporarily restraining Milliken and its board of directors from transacting at the scheduled annual meeting any business, including voting for the proposed charter amendments. The restraining order was not opposed.

Several weeks later, defendants' attorney, by letter dated June 10, 1987, informed the Court and plaintiffs that Milliken's directors had, at a meeting on June 4, 1987: (a) withdrawn all the contested charter and bylaw amendments and the original notice and proxy statements; and (b) adopted for shareholder ratification a revised bylaw, six charter amendments and three new charter provisions (hereafter, the "substitute amendments"). Defense counsel provided the court and opposing counsel with copies of the substitute amendments and with a "draft" of a proposed notice to stockholders of the reconvened annual meeting (hereafter, "the proposed revised notice").

In contrast to management's original notice, the proposed revised notice, beyond including the full text of the substitute amendments, did not include any letter of explanation by management of the substitute amendments and the board's reasons for their adoption and recommendation for shareholder approval. The proposed revised notice also did not include any proxy materials. Instead, the chairman's draft notice suggested that if stockholders had any questions concerning the substitute amendments, they should attend the meeting and management or counsel would endeavor to answer their questions.

Counsel's letter concluded by stating that if the court had "no problem" with both the notice and the substitute amendments and if plaintiffs expressed no objection to them, defendants would complete the notice for issuance by including "other appropriate stockholder matters" and fixing a date and time for the meeting. Counsel opined that Milliken's board's action taken June 4, 1987 had mooted the pending suit. However, defendants did not seek to formally dissolve the outstanding temporary restraining order.

Plaintiffs responded to what the trial court later characterized as defendants' "new proposal" by obtaining leave to file an amended complaint, entitled "Supplement to the Complaint." *See* Chanc.Ct.R. 15(d). Treating the proposed revised notice as an actual "finalized" notice, plaintiffs charged the defendant directors with failing to provide Milliken's stockholders with "all information material" to the business of the meeting and with proposing to issue a notice that was false and misleading and in breach of the directors' duty of complete candor. The Supplement also attacked the substitute amendments on their merits as invalid as a matter of law and as designed to entrench incumbent management. Plaintiffs again sought injunctive relief and a ruling declaring the proposed charter and bylaw amendments to be contrary to Delaware law.

Defendants then renewed a previously filed motion to dismiss all of plaintiffs' original and supplemental claims, individual and derivative; and the trial court, by unreported decision and order dated March 18, 1988, granted in part but denied in part the defendants' several motions: *First,* the court dismissed, as mooted by defendants' June 4 action, all counts of plaintiffs' original complaint ["the individual claims"] attacking defendants' original notice and accompanying proxy materials. *Second,* the court dismissed all of plaintiffs' derivative claims (stated in both the original complaint and the Supplement)—for failure of plaintiffs to establish the futility of presuit demand on the board. *Third,* the court found "most," but not all, of plaintiffs' individual claims raised by their Supplement to be either mooted or without merit. The court thereby ruled that, with one exception, defendants' proposed revised notice complied with 8 *Del.C.* §§ 222 and 242. The court stated:

> The standards for disclosure in a notice of an annual meeting are less than those required in a proxy solicitation. 8 *Del.C.* §§ 222 and 242 do not require complete disclosures in the notice of an annual meeting, unless the omissions are likely to mislead the stockholders.

However, the court found defendants' proposed revised notice "not sufficient because it fails to declare the advisability of the proposed amendments, as required by 8 *Del.C.* § 242." On this ground, the court ruled:

Defendants' motion to dismiss plaintiffs' individual claim that the proposed notice of the reconvened stockholders' meeting is inaccurate and incomplete is however denied. IT IS SO ORDERED.

Plaintiffs' appeal is taken from both the trial court's March 18, 1988 decision and order and from a subsequent order captioned "Final Order of Judgment." The latter was entered after plaintiffs moved for "Clarification or Entry of Final Judgment" and after defendants stated that they would make an appropriate amendment of the board resolution and notice to comply with the court's ruling.

## II

Neither the court below nor the parties addressed the questions now confronted: whether the issues raised by plaintiffs' "Supplement to the Complaint," in particular, the standard of disclosure controlling management's proposed revised notice to stockholders, presented the court below, and this court on appeal, with an actual case or controversy or constitutes a request for an advisory opinion.

Plaintiffs and defendants take essentially the same position. They contend that the decision appealed constitutes an actual case or controversy by virtue of the existence of an ongoing bona fide dispute between the parties requiring judicial resolution. Plaintiffs state that their original complaint clearly involved an actual case or controversy and that defendants' corrective action of June 4 resulted in a continuation of the controversy only on a different set of facts. Had plaintiffs not responded by their Supplement, they state that defendants would have felt "free" to issue their revised proposed notice and proceed with the reconvened meeting, to plaintiffs' injury. Plaintiffs also contend that since the relief they seek by their Supplement includes a declaration of the lawfulness of the substitute amendments, the "controversy" meets the liberalized requirements of the Delaware declaratory judgment statute as amended. See 10 Del.C., ch. 65, as amended.

Defendants assert that the case "seem[s]" to meet the prerequisites for an "actual controversy" as defined by this Court in Rollins International, Inc. v. International Hydronics Corp., Del.Supr., 303 A.2d 660, 662–63 (1973). They further state that in view of the outstanding temporary restraining order, management would have risked a charge of contempt of court if it had completed the Revised Notice (fixing the date and time of meeting) and had proceeded to call the meeting. Thus, defendants say that this case presents "a classic instance for the exercise of this Court's declaratory judgment jurisdiction," given the present posture of the dispute between the parties. We disagree with both parties' assessment of the case as meeting the case or controversy requirement for judicial intervention by declaratory judgment or otherwise.

## III

Delaware law is well settled that this Court's jurisdiction over appeals from the Court of Chancery does not require us to "entertain suits seeking an advisory opinion or an adjudication of hypothetical questions...." Rollins, at 662. While the Declaratory Judgment statute, 10 Del.C., ch. 65, may be employed as a procedural device to "advance the stage at which a matter is traditionally justiciable," Rollins, 303 A.2d at 662, the statute "is not to be used as a means of eliciting advisory opinions from the courts." Ackerman v. Stemerman, Del.Supr., 201 A.2d 173, 175 (1964). Delaware's adoption of the uniform act in 1981 does not invalidate this caveat on its use. Schick Inc. v. Amalgamated Clothing and Textile Workers Union, Del.Ch., 533 A.2d 1235, 1238 (1987). Thus, it is clear that the "prerequisites of an 'actual controversy,'" as Rollins delineates, must still be met:

(1) It must be a controversy involving the rights or other legal relations of the party seeking declaratory relief; (2) it must be a controversy in which the claim of right or other legal interest is asserted against one who has an interest in contesting the claim; (3) the controversy must be between parties whose interests

are real and adverse; (4) the issue involved in the controversy must be ripe for judicial determination.

*Rollins,* 303 A.2d at 662–63 (citation omitted).

We conclude that this case does not meet this four-part test. As *Rollins* establishes, the existence of a controversy is not determinative. Unless a controversy is "ripe for judicial determination," a court may simply be asked to render an advisory opinion. The law is well settled that our courts will not lend themselves "to decide cases which have become moot, or to render advisory opinions." *State v. Mancari,* Del.Supr., 223 A.2d 81, 82–83 (1966).

Courts in this country generally, and in Delaware in particular, decline to exercise jurisdiction over cases in which a controversy has not yet matured to a point where judicial action is appropriate. *Schick Inc. v. Amalgamated Clothing and Textile Workers Union,* Del.Ch., 533 A.2d 1235, 1239 (1987). Courts decline to render hypothetical opinions, that is, dependent on supposition, for two basic reasons. "First, judicial resources are limited and must not be squandered on disagreements that have no significant current impact and may never ripen into legal action [appropriate for judicial resolution]. Second, to the extent that the judicial branch contributes to law creation in our legal system, it legitimately does so interstitially and because it is required to do so by reason of specific facts that necessitate a judicial judgment." *Id.* at 1239. Whenever a court examines a matter where facts are not fully developed, it runs the risk not only of granting an incorrect judgment, but also of taking an inappropriate or premature step in the development of the law.

■ These judicial concerns are not rendered irrelevant by the declaratory judgment statute and its salutary purpose of advancing the stage of litigation. *See Diebold Computer Leasing Inc. v. Commercial Credit Corp.,* Del.Supr., 267 A.2d 586, 591–92 (1970). The reasons for not rendering a hypothetical opinion must be weighed against the benefits to be derived from the rendering of a declaratory judgment. This

weighing process requires "the exercise of judicial discretion which should turn importantly upon a practical evaluation of the circumstances" of the case. *Schick,* 533 A.2d at 1238. In determining whether an action is ripe for judicial determination, a "practical judgment is required." *Schick* at 1239. As one federal appeals court has succinctly stated in the context of a review of an administrative order:

> The law of ripeness, once a tangle of special rules and legalistic distinctions, is now very much a matter of common sense.... What is required is that the interest of the court ... in postponing review until the question arises in some more concrete and final form, be outweighed by the interests of those who seek relief from the challenged action's immediate and practical impact upon them.

*Continental Air Lines, Inc. v. C.A.B.,* D.C.Cir., 522 F.2d 107, 124–125 (1975). Finally, in weighing whether the time is ripe for judicial determination, the willingness of the parties to litigate is immaterial. *Stabler v. Ramsay,* Del.Supr., 88 A.2d 546, 549 (1952).

■ The first step in this process of common sense evaluation is the identification of the legal questions in the case. Under Delaware law, it is undisputed that when a board of directors "is required or elects to seek shareholder action," it is under a duty "to disclose fully and fairly pertinent information within the board's control." *Lacos Land Company v. Arden Group, Inc.,* Del.Ch., 517 A.2d 271, 279 (1986); *see also Rosenblatt v. Getty Oil Co.,* Del.Supr., 493 A.2d 929, 944–45 (1985); *Smith v. Van Gorkom,* Del.Supr., 488 A.2d 858, 889–03 (1985); *Lynch v. Vickers Energy Corp.,* Del.Supr., 383 A.2d 278, 279, 281 (1978). Thus, a board's duty of complete candor to its shareholders to disclose all germane or material information applies as well to matters of corporate governance as to corporate transactions.

■ With public corporations, the medium for disclosure is generally the proxy statement. In this case, Milliken's board first transmitted, and then "withdrew,"

proxy materials. The board then proposed to issue, if the trial court approved, a "statutory" notice of meeting purportedly in compliance with sections 222 and 242(b)(1) and without providing its shareholders with any pre-meeting written explanation of the substitute amendments even though they appear to involve significant changes in matters of corporate governance. Instead, the board, by its proposed notice, states that "the matters to be presented ... are best discussed" at the meeting and that management will *there* "endeavor to answer questions from stockholders concerning the proposed amendments."

The issues which are raised by management's alternative notice approach are: (1) whether the defendant directors of a private company may, under the operative facts, avoid a common law duty of candor by not soliciting proxies and by simply complying with the statutory notice requirements of 8 *Del.C.* §§ 222 and 242; and (2) whether the directors *will* have in fact complied with 8 *Del.C.* §§ 222 and 242 by their proposed revised notice in its present form and without further changes being made to it. These issues are novel and important ones to Delaware corporate law as well as to these parties.

The significance of these issues requires this Court to demand that the dispute between the parties be close to a "concrete and final form." *Schick*, at 1239. To require anything less is but an invitation for a court to render an advisory opinion based on a hypothetical case, and the definition of rights which are "only future or contingent." *Stabler v. Ramsay*, Del.Supr., 88 A.2d 546, 550 (1952). In this case, the facts upon which the decision under review is based are taken from a letter to the court from a party litigant seeking the reaction of opposing counsel and the court to an alternative course of action to its original enjoined undertaking.[1] Not only have the operative facts changed, the legal issues are markedly different from those framed by defendants' original proxy solicitation.

The original action is conceded to be moot; but rather than seeking a dismissal of the suit, both parties seek a final judicial determination of the legal sufficiency of management's statutory notice technique before putting such process into effect. The parties have thereby inappropriately drawn the trial court into the granting of an advisory opinion upon a significant question of corporation law which, in our view, was clearly not ripe for judicial intervention. *Stabler v. Ramsay*, 88 A.2d at 550; *State v. Mancari*, Del.Supr., 223 A.2d at 82–83. Thus, on this ground alone the appeal must be dismissed.

Other common sense reasons require dismissing this appeal for review of what we find to be an advisory opinion. The grant of declaratory judgment is always discretionary; and before a court should declare the rights of parties in a dispute, it must not only "be convinced that litigation sooner or later appears to be unavoidable," but also that the material facts are static and that the rights of the parties are presently defined rather than future or contingent. *See Stabler*, 88 A.2d at 550; *Rollins*, at 662. We are not persuaded that the present record is a final record for determining at this time the significant issues raised by the parties.

The issues raised also appear to pose questions of law which may be significantly influenced by the facts. On the record before us, there are few facts which are undisputed and we suspect further facts will emerge before the controversy is ripe for judicial intervention. *See* F.H. O'Neal & R. Thompson, *O'Neal's Oppression of Minority Shareholders*, § 7.17 p. 122 (2d ed. 1985) ("a court's decision to grant relief [for a breach of fiduciary duty] will usually turn on the particular facts of each case"). The mere assertions of the parties simply do not make the dispute ripe for decision.

■ The appeal must also be dismissed because the decision and order from which

---

1. Since this action has not been brought as a class action, query what legal effect would approval from counsel for these plaintiffs and the court have as to a form of notice that Milliken's

other shareholders have not had an opportunity to review? *Cf. Lipton v. News International PLC*, Del.Supr., 514 A.2d 1075, 1080 (1986).

the appeal is taken is an interlocutory and not a final order; and plaintiffs have failed to comply with the procedural requirements of Rule 42(c) and (d). *See Baylis v. Wilmington Medical Center*, Del.Supr., 477 A.2d 1051, 1059 n. 10 (1984); *Julian v. State, ex rel. Secretary of the Department of Transportation*, Del.Supr., 440 A.2d 990, 991 (1982); *Taylor v. Collins and Ryan, Inc.*, Del.Supr., 440 A.2d 990 (1981). As previously noted, the decision and order sought to be reviewed granted in part but denied in part defendants' motion to dismiss. Thus, the case remains pending before the Court of Chancery upon one recognized, unresolved issue concerning the adequacy of management's pre-meeting notice. Hence, the finality required for conferring upon parties a right of appeal to this Court without compliance with Rule 42 is clearly lacking. Parties may not convert an otherwise interlocutory order into a final order by consensual conduct or by representations of intention to take remedial action so as to render an otherwise less-than-final order final for purposes of appeal. *Cf. Riggs v. Riggs*, Del.Supr., 539 A.2d 163 (1988).

Finally, the dispute between the parties is over when the defendant directors of Milliken should be required, under the circumstances of this case, to meet their duty of complete candor to their shareholders concerning significant matters of corporate governance. Since the defendant directors apparently contend that the issue of their discharge of their fiduciary duty to Milliken's shareholders should await the holding of the reconvened annual meeting, it is clear that the present dispute between the parties raises issues of an interlocutory nature that, in all probability, will not terminate the litigation.

For the foregoing reasons, we dismiss the appeal, remand the case to the trial court, and direct the court to vacate its decision and dismiss the proceedings below on the several grounds stated.

\* \* \*

APPEAL DISMISSED.