**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

LORI W. WILL
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted: April 11, 2022
Date Decided: July 8, 2022

Geoffrey G. Grivner, Esquire
Kody M. Sparks, Esquire
Buchanan Ingersoll & Rooney PC
500 Delaware Avenue, Suite 720
Wilmington, Delaware 19801

Larry R. Wood, Jr., Esquire
Anna E. Currier, Esquire
Blank Rome LLP
1201 North Market Street, Suite 800
Wilmington, Delaware 19801

RE: *Adam Klein & Tara Klein v. ECG Topco Holding, LLC*,
C.A. No. 2021-0701-LWW

Dear Counsel:

This decision addresses the defendant's motion to dismiss under Court of Chancery Rules 12(b)(1) and 12(b)(6). For the reasons discussed below, the motion is granted. This action generally lacks an actual controversy and the plaintiffs seek what amounts to an advisory opinion. The single portion of the dispute that appears ripe fails to state a claim upon which relief can be granted. The plaintiffs' claims are therefore dismissed without prejudice.

## I.     FACTUAL BACKGROUND[1]

Plaintiff Adam Klein ("Klein") is a Class B member of defendant ECG Topco Holdings, LLC (the "Company"), a Delaware entity that owns a controlling interest in healthcare consulting firm Executive Consulting Group, LLC.[2]  Klein was employed by Executive Consulting Group from 2013 to 2020.[3]

On November 1, 2019, the Company's members (including Klein) entered into the Third Amended and Restated Limited Liability Company Agreement of ECG Topco Holdings, LLC (the "LLC Agreement").[4]  As of that date, Klein held 1,700,000 Class B units.[5]  On September 9, 2020, plaintiff Tara Klein took possession of 90% of Klein's units in connection with their divorce.[6]

The plaintiffs' divorce agreement constituted a "Triggering Event" as defined by the LLC Agreement.[7]  Section 8.02(h) of the LLC Agreement includes in its

---

[1] The facts described in this section are drawn from the plaintiffs' Verified Complaint and the documents it incorporates by reference.  Dkt. 1 ("Compl."); *see Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808, 818 (Del. 2013) ("[A] plaintiff may not reference certain documents outside the complaint and at the same time prevent the court from considering those documents' actual terms." (quoting *Fletcher Int'l, Ltd. v. ION Geophysical Corp.*, 2011 WL 1167088, at *3 n.17 (Del. Ch. Mar. 29, 2011))).

[2] Compl. ¶¶ 1, 3-4, 9.

[3] *Id.* ¶¶ 8, 25.

[4] Compl. Ex. A ("LLC Agreement") (Dkt. 1).

[5] Compl. ¶ 9.

[6] *Id.* ¶¶ 17-18.

[7] *Id.* ¶ 19.

definition of Triggering Event the "possession [including by a Spouse as a result of divorce] of an Affected Member's Units."[8] On September 11, 2020, Klein delivered a "Triggering Event Communication" to the Company pursuant to Section 8.02 of the LLC Agreement.[9]

Section 8.01 of the LLC Agreement provides that, upon the occurrence of a Triggering Event, a Class B member is "deemed to have made an offer to Transfer" his or her units.[10] The LLC Agreement explains that other Class B members, the Company, or ECG Acquisition Inc. (the Company's sole Class A and controlling member) are to purchase the "Affected Units" to be tendered after a Triggering Event.[11] Section 8.04 of the LLC Agreement sets out the procedure by which those Affected Units are to be offered, the price to be paid for the units, and when and how such payment is to be made.[12]

On October 23, 2020, Executive Consulting Group terminated Klein's employment.[13] The LLC Agreement contains several restrictive covenants that run from November 1, 2019 to the later of November 1, 2024 and the third anniversary

---

[8] LLC Agreement § 8.02(h).

[9] Compl. ¶ 20; *see* LLC Agreement § 8.02.

[10] LLC Agreement § 8.01.

[11] *Id.* § 8.04(a); *see* Compl. ¶ 21.

[12] LLC Agreement § 8.04.

[13] Compl. ¶ 25.

of the date a member is no longer providing services to the Company (in Klein's case, October 23, 2023).[14]  Section 12.02(a) of the LLC Agreement includes a non-compete provision and Section 12.02(b) contains a non-solicitation provision.[15]

On November 11, 2020, counsel for the Company and Executive Consulting Group sent Klein a draft severance agreement that required Klein to sell his units for $0.30 per share.[16]  According to that draft agreement, the $0.30 per share price represented the "Applicable Liquidation Value" of the units as of September 30, 2020, in accordance with the LLC Agreement.[17]

The plaintiffs' Verified Complaint, in which they dispute the Company's interpretation of the purchase price provisions in the LLC Agreement as applied to their units, was filed on August 16, 2021.[18]  The Complaint advances two counts.

Count One is styled as a breach of contract claim "seeking a determination regarding the construction of the LLC Agreement."[19]  The plaintiffs seek a series of declarations as relief.  Effectively, they ask the court to declare that the LLC Agreement requires ECG Acquisition to purchase the Kleins' units at $1 per share

---

[14] LLC Agreement § 12.02(d); *see* Compl. ¶¶ 12-15.

[15] *See* LLC Agreement §§ 12.02(a)-(b).

[16] Compl. ¶ 26.

[17] *Id.* ¶ 26.

[18] Dkt. 1.

[19] Compl. ¶ 41.

(the allegedly applicable "Triggering Event Purchase Price"), that ECG Acquisition must pay for the units on a monthly basis over a three-year period that began on September 9, 2020, and that ECG Acquisition is delinquent on those payments (together, the "Payment Claim").[20] They also ask the court to declare that the restrictive covenants in Sections 12.02(a) and 12.02(b) of the LLC Agreement are void because the Company and ECG Acquisition breached that contract—the former by failing to properly notify ECG Acquisition of its decision not to purchase the Kleins' units and the latter by failing to pay the Kleins (the "Purchase Notice Claim").[21]

Count Two is also styled as a breach of contract claim. The plaintiffs seek a declaration that the restrictive covenants in Sections 12.02(a) and 12.02(b) of the LLC Agreement are overbroad and unenforceable under Delaware law.[22]

The defendant moved to dismiss the Complaint on October 22, 2021.[23] After briefing was complete, I heard oral argument on the defendant's motion on April 11, 2022.[24]

---

[20] Specifically, the Payment Claim consists of the declaratory judgments sought in paragraphs 45-49 of the Complaint.

[21] Compl. ¶ 50.

[22] *Id.* ¶¶ 51-58.

[23] Dkt. 12.

[24] Dkt. 31.

## II.    LEGAL ANALYSIS

The defendant seeks dismissal under Court of Chancery Rules 12(b)(1) and 12(b)(6).  It argues that the court lacks subject matter jurisdiction over the plaintiffs' claims because no justiciable controversy exists.  The defendant also contends that dismissal is proper under Rule 12(b)(6) because that the plaintiffs have not stated a claim upon which relief can be granted.[25]  For the reasons discussed below, Count One's Payment Claim and Count Two are dismissed under Rule 12(b)(1) and Count One's Purchase Notice Claim is dismissed under Rule 12(b)(6).

### A.    Rule 12(b)(1) Arguments

When considering a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, I must take all well-pleaded allegations as true and construe reasonable inferences in the non-movant's favor.[26]  "The burden of establishing the Court's subject matter jurisdiction rests with the party seeking the Court's intervention."[27]

---

[25] *See* Def.'s Opening Br. 1 (Dkt. 17).

[26] *de Adler v. Upper N.Y. Inv. Co.*, 2013 WL 5874645, at *7 (Del. Ch. Oct. 31, 2013).

[27] *Ropp v. King*, 2007 WL 2198771, at *2 (Del. Ch. July 25, 2007).

This court has subject matter jurisdiction over a declaratory judgment action where, among other things, an "actual controversy" exists between the parties.[28] For an actual controversy to exist, "the issue involved in the controversy must be ripe for judicial determination."[29] Determining ripeness, in turn, requires "a common sense assessment of whether the interests of the party seeking immediate relief outweigh the concerns of the court 'in postponing review until the question arises in some more concrete and final form.'"[30] A controversy is generally ripe where the "material facts are static" and "litigation sooner or later appears to be unavoidable."[31]

### 1. The Payment Claim

The defendant moves to dismiss the Payment Claim in Count One pursuant to Rule 12(b)(1), arguing that the plaintiffs have not pleaded an actual controversy. Though the plaintiffs attempt to parse the LLC Agreement to support an

---

[28] *Cedarview Opportunities Master Fund, L.P. v. Spanish Broad. Sys., Inc.*, 2018 WL 4057012, at *20 (Del. Ch. Aug. 27, 2018); *see* 10 *Del. C.* § 6501. The Complaint provides that the court has subject matter jurisdiction pursuant to 6 *Del. C.* § 18-111. Compl. ¶ 5.

[29] *Stroud v. Milliken Enters., Inc.*, 552 A.2d 476, 480 (Del. 1989) (quoting *Rollins Int'l, Inc. v. Int'l Hydronics Corp.*, 303 A.2d 660, 663 (Del. 1973)); *see also S'holder Representative Servs. LLC v. Alexion Pharms., Inc.*, 2021 WL 3925937, at *4 (Del. Ch. Sept. 1, 2021) (noting that "[r]ipeness, the simple question of whether a suit has been brought at the correct time, goes to the very heart of whether a court has subject matter jurisdiction").

[30] *XL Specialty Ins. Co. v. WMI Liquid. Tr.*, 93 A.3d 1208, 1217 (Del. 2014) (quoting *Stroud*, 552 A.2d at 480).

[31] *Id.* (quoting *Julian v. Julian*, 2009 WL 2937121, at *3 (Del. Ch. Sept. 9, 2009)).

interpretation that would rebut the defendant's argument, a review of that Agreement reveals that the Payment Claim is unripe.

The plaintiffs allege that a Triggering Event under the LLC Agreement occurred on September 9, 2020.[32] Specifically, they contend that Klein's transfer of a portion of his Class B units to Tara Klein constituted a Triggering Event under Section 8.02(h).[33] Following Klein's delivery of the Triggering Event Communication on September 11, 2022, they assert, the other Class B members had 90 days to exercise an option to purchase the Kleins' units, the Company had the following 180 days to do the same, and—if the options remained unexercised—ECG Acquisition was "required to purchase all or any portion of the Affected Units that the Class B Members and the Company [did] not elect[] to purchase."[34] The plaintiffs also allege that the price to be paid for the units is equal to the "Triggering Event Purchase Price."[35]

For Triggering Events "set forth in Section[s] 8.02(e)-(l)," the LLC Agreement provides that the "Triggering Event Purchase Price shall equal the Applicable Liquidation Value of such Affected Units as of the Applicable Valuation

---

[32] Compl. ¶¶ 18-19.

[33] LLC Agreement § 8.02(h).

[34] *Id.* § 8.04(d); *see id.* § 8.04(a).

[35] *See id.* § 8.04(f).

Date."[36]  The Applicable Liquidation Value is the "Liquidation Value of a Class B Unit as of each Valuation Date immediately preceding an Equity Event Date."[37]  The Valuation Date is September 30 of any given year and the earliest possible Equity Event Date is January 31, 2023.[38]  The Applicable Valuation Date is "the Valuation Date immediately prior to" the Triggering Event.[39]

A nonsensical result seems to arise from these competing definitions.  Read together, the Triggering Event Purchase Price after a Section 8.02(h) Triggering Event is equal to a value set as of September 30, 2022 (the Valuation Date preceding the Equity Event Date) which is itself set as of September 30, 2019 (the Valuation Date prior to the Triggering Event).[40]  Thus, it is difficult to discern under the LLC Agreement *how much* would be owed to the Kleins for their Class B units.

---

[36] *Id.* § 8.04(c).

[37] *Id.* § 7.09(a).

[38] *Id.* § 1.01.  The full definition of Equity Event Date in the LLC Agreement is "(i) January 31st of each year, beginning after the third (3rd) anniversary of the Effective Date, and if earlier, (ii) January 31st of each year beginning in the year in which an Edmiston Termination occurs; provided, that any Equity Event Date may be extended for up to 30 days by the Board, including the Class B Manager, in its discretion."  *Id.*  Because the "Effective Date" is November 1, 2019 and the "Edmiston Termination" scenario was not triggered, the earliest possible Equity Event Date is January 31, 2023.  *Id.* at Preamble; Compl. ¶ 35.

[39] LLC Agreement § 8.04(b)

[40] Though the table in Section 8.04(f) seems to further confuse the issue by speaking in terms of the "Fair Market Value," the Fair Market Value is simply the Liquidation Value for purposes of Article VIII of the LLC Agreement.  *Id.* § 1.01.

There is comparatively less ambiguity, however, as to *when* ECG Acquisition is required to pay the Triggering Event Purchase Price. Section 8.04(e) of the LLC Agreement states that the "consummation of such sale shall be held at the offices of the Company on the Equity Event Date . . . following the date the Class A Member Purchase Notice was issued."[41] It is "[o]n the date determined in Section 8.04(e) [that] the Affected Member shall . . . tender to . . . the Class A Member" their units. And it is on that date that the Class A Member "shall pay the Affected Member the Triggering Event Purchase Price . . . by way of the provision of an unsecured non-negotiable promissory note . . . with an original principal balance and payment terms as set forth on the table" in Section 8.04(f).[42]

The table in Section 8.04(f) states that the Company can choose between two sets of payment terms following a Section 8.02(h) Triggering Event. One of the sets requires the Company to pay the principal balance "in a single installment on [the] 3rd anniversary of [the] Triggering Event."[43]

---

[41] *Id.* § 8.04(e). Tying the applicable Equity Event Date to the Class A Member Purchase Notice—which the plaintiffs allege has not been issued—seems to invite the possibility of the payment date being delayed indefinitely. Because the plaintiffs do not raise this issue in their Complaint, I do not address it in this letter opinion.

[42] *Id.* § 8.04(f).

[43] *Id.*

The parties agree that the earliest possible Equity Event Date is January 31, 2023 and that the Triggering Event date is September 9, 2019. As a result, the earliest time at which ECG Acquisition would owe the plaintiffs a promissory note is January 31, 2023. The earliest date on which the balance would become due—given the plain language of the contract and under the payment terms described above—is September 9, 2022.

Regardless of the internal inconsistency of having to pay off the principal balance of a note before its issuance, the plaintiffs have not been harmed by any non-payment of the Triggering Event Purchase Price—however defined—because payment is not yet due. This court "decline[s] to render hypothetical opinions, that is, [those] dependent on supposition."[44] Because I cannot determine whether the plaintiffs will be satisfactorily paid for their Class B units at some point in the future, the adjudication of the plaintiffs' Payment Claim would be premature and advisory.[45] Judicial intervention may ultimately prove unnecessary.

---

[44] *Stroud*, 552 A.2d at 480.

[45] *See id.* at 479 (noting that while the Declaratory Judgment Act "may be employed as a procedural device to 'advance the stage at which a matter is traditionally justiciable,' the statute 'is not to be used as a means of eliciting advisory opinions from the courts'" (quoting *Rollins Int'l*, 303 A.2d at 662)).

Accordingly, the Payment Claim in Count One is unripe. It must be dismissed without prejudice under Rule 12(b)(1).[46]

### 2. Count Two

The defendant also argues that Count Two does not present a justiciable dispute under Rule 12(b)(1), asserting that the plaintiffs have failed to demonstrate harm caused by the restrictive covenants in the LLC Agreement. The plaintiffs disagree, claiming that the restrictions theoretically prevent Klein from activities (such as soliciting Company customers) he might otherwise undertake.

Section 12.02(a) of the LLC Agreement prevents Klein from engaging in "Competition"—that is, from "in any manner engag[ing] in any business or enterprise . . . in which [ECG Topco] or any of its Subsidiaries" participates—until November 1, 2024.[47] Section 12.02(b) requires him to not "induce or attempt to induce" the Company or its subsidiaries' employees from leaving or their customers

---

[46] Dismissals for lack of subject matter jurisdiction are generally without prejudice. *See, e.g.*, *Intel Corp. v. Fortress Inv. Gp. LLC*, 2021 WL 4470091, at *9 & n.79 (Del. Ch. Sept. 30, 2021) (dismissing claims for lack of subject matter jurisdiction without prejudice where jurisdiction was lacking because the relief sought was duplicative of adequate remedies at law); *Carlyle Inv. Mgmt. L.L.C. v. Moonmouth Co.*, 2015 WL 5278913, at *18 (Del. Ch. Sept. 10, 2015) (dismissing claims without prejudice where subject matter jurisdiction was lacking because no actual controversy existed).

[47] LLC Agreement §§ 1.01, 12.02(a), 12.02(d). More specifically, Klein is prevented from engaging in Competition until the later of November 1, 2024 and the third anniversary of his termination, October 23, 2023. *See id.* § 12.02(d).

and other "business relation[s]" from "materially alter[ing]" their relationships with the Company.[48]

The Complaint is devoid of allegations suggesting that Klein is attempting to (or would like to) solicit the Company's clients but is restrained by Section 12.02(b). Nor does it suggest that Klein has been unable to obtain employment or that he is otherwise harmed by Section 12.02(a). The only allegations in the Complaint concerning the restrictive covenants simply restate the covenants themselves.[49] The plaintiffs have therefore not pleaded a legitimate, non-hypothetical interest in having the court determine the validity of the LLC Agreement's restrictive covenants.[50]

As a result, *Sapp v. Casey Employment Services, Inc.*, on which the plaintiffs rely, is inapposite.[51] In *Sapp*, the plaintiff alleged that she had "attempted, without success, to find employment that would not violate the disputed covenant not to compete," that she did not have "any education, training or skills outside of the

---

[48] *Id.* § 12.02(b).

[49] Compl. ¶¶ 55-56.

[50] *See In re Digex, Inc. S'holders Litig.*, 789 A.2d 1176, 1206 (Del. Ch. 2000) (noting that a ripeness determination involves a "practical evaluation of the legitimate interest of the plaintiff in a prompt resolution of the question presented and the hardship that further delay may threaten" (quoting *Schick Inc. v. Amalgamated Clothing & Textile Workers Union*, 533 A.2d 1235, 1239 (Del. Ch. 1987))).

[51] 1989 WL 133628 (Del. Ch. Nov. 3, 1989).

[relevant] industry," and that she was unemployed as a result.[52]  Nothing of the sort is alleged here.[53]

Having failed to demonstrate an actual controversy between the parties, the plaintiffs have not met their burden of establishing subject matter jurisdiction in this court.  Count Two is therefore also dismissed without prejudice.

### B.     Rule 12(b)(6) Arguments

Under Rule 12(b)(6), all well-pleaded allegations are accepted as true and reasonable inferences are drawn in the non-movant's favor.[54]  A complaint must be dismissed where it "does not assert sufficient facts that, if proven, would entitle the plaintiff to relief."[55]

In the Purchase Notice Claim advanced in Count One, the plaintiffs assert that the restrictive covenants in the LLC Agreement are void because the Company and ECG Acquisition violated the LLC Agreement.  They allegedly did so by,

---

[52] *Id.* at *3.

[53] *See* Def.'s Reply Br. 18-19 (Dkt. 21).  According to a press release submitted by the defendant, Klein has secured gainful employment at an accounting and consulting firm since leaving Executive Consulting Group.  *See Weaver Continues Expansion of Health Care Practice with the Addition of Adam Klein, Managing Director*, Press Release (Dec. 14, 2021); *In re Duke Energy Corp. Deriv. Litig.*, 2016 WL 4543788, at *4 n.34 (Del. Ch. Aug. 31, 2016) (taking judicial notice of a publicly available press release).

[54] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002).

[55] *In re Crimson Expl. Inc. S'holder Litig.*, 2014 WL 5449419, at *8 (Del. Ch. Oct. 24, 2014).

respectively, "not issuing a Purchase Notice" for the Kleins' units and failing to make required payments.[56]  Above, I dismissed the plaintiffs' claim related to alleged failure to make payments because it is not ripe.  That argument can no longer support the Purchase Notice Claim.

That leaves the aspect of the Purchase Note Claim based on the allegation that "[the Company] has violated the LLC Agreement by not issuing a Purchase Notice for the Affected Units."[57]  The defendant argues that this contention cannot form the basis of a reasonably conceivable claim because a purchase notice is not owed to the Kleins.[58]

The plain language of the LLC Agreement supports the defendant's argument. The LLC Agreement requires the Company to give ECG Acquisition—not Class B members—written notice "as soon as practicable" once it determines that ECG

---

[56] Compl. ¶ 50.

[57] *Id.*

[58] Def.'s Opening Br. 21.  Though the defendant makes this argument in a section focused on Rule 12(b)(1) and the plaintiffs respond in similarly titled section, where "the issue of standing is so closely related to the merits, a motion to dismiss based on lack of standing is properly considered under Rule 12(b)(6) rather than Rule 12(b)(1)." *Appriva S'holder Litig. Co. v. ev3, Inc.*, 937 A.2d 1275, 1285-86 (Del. 2007); *see* Pls.' Answering Br. 27 (Dkt. 19).  Because the defendant also moved under Rule 12(b)(6), I consider the parties' arguments under that Rule.

Acquisition will be required to purchase a Class B member's units after a Triggering Event.[59]

But even if the Company failed to supply ECG Acquisition with notice, that purported breach would not entitle the plaintiffs to the relief of voiding the restrictive covenants that they seek.

When it comes to restrictive covenants of the type at issue here, "Delaware courts excuse performance of non-compete obligations following a material breach" that "goes to the essence" of the agreement.[60]  Often, the material breach involves the non-payment of compensation by an employer as per the terms of an employment agreement.[61]  That was the case in *Physiotherapy Corp v. Moncure*, for instance, which the plaintiffs cite for support.[62]  There, the defendant employer's breach lowered the plaintiff's compensation by 15-18% by affecting a portion of an employment agreement that the plaintiff had specifically negotiated with the employer.[63]  The court found that amount to be material and that aspect of the contract "key"—it went "to the essence" of the agreement.[64]

---

[59] LLC Agreement § 8.04(d).

[60] *Physiotherapy Corp. v. Moncure*, 2018 WL 1256492, at *4 (Del. Ch. Mar. 12, 2018).

[61] *See, e.g.*, *id.*

[62] *Id.*

[63] *Id.* at *5.

[64] *Id.* at *4, *6.

Here, the required notice to ECG Acquisition does not form the essence of the LLC Agreement.[65] Certainly, it does not form the essence of the LLC Agreement for the plaintiffs, to whom no notice is owed. The plaintiffs do not even allege that this breach is material or that they have been harmed by the Company's alleged failure to give notice to ECG Acquisition.

The Purchase Notice Claim in Count One is therefore dismissed without prejudice under Rule 12(b)(6).

## III. CONCLUSION

For the reasons described above, the Complaint is dismissed without prejudice in its entirety. The parties shall confer on and submit an implementing order within one week of this decision.

Sincerely yours,

*/s/ Lori W. Will*

Lori W. Will
Vice Chancellor

---

[65] *See id.* at *5 ("A slight breach by one party . . . while giving rise to an action for damages, will not necessarily terminate the obligations of the injured party to perform under the contract.").