# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| YVONNE WILLIAMS, on behalf of herself and similarly situated Sorrento Therapeutics, Inc. stockholders and derivatively on behalf of Sorrento Therapeutics, Inc., | ) ) ) ) ) ) | C.A. No. 12729-VCMR |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| HENRY JI, WILLIAM S. MARTH, KIM D. JANDA, JAISIM SHAH, DAVID H. DEMING, DOUGLAS EBERSOLE, GEORGE NG, and JEFFREY SU, | ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| SORRENTO THERAPEUTICS, INC., a Delaware corporation, | ) ) ) | |
| Nominal Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted:  May 31, 2017
Date Decided:  June 28, 2017

Joel Friedlander, Christopher M. Foulds, and Christopher Quinn, FRIEDLANDER & GORRIS, P.A., Wilmington, Delaware; Mark Lebovitch, David Wales, Christopher J. Orrico, and Alla Zayenchik, BERNSTEIN LITOWITZ BERGER & GROSSMAN LLP, New York, New York; Francis Bottini Jr., BOTTINI & BOTTINI, INC., La Jolla, California; *Attorneys for Plaintiff.*

J. Clayton Athey and John G. Day, PRICKETT, JONES & ELLIOTT, P.A., Wilmington, Delaware; Peter M. Stone and Rachana N. Fischer, PAUL HASTINGS LLP, Palo Alto, California; *Attorneys for Defendants.*

**MONTGOMERY-REEVES, Vice Chancellor.**

This action arises out of an alleged scheme in which the directors of a Delaware corporation granted themselves options and warrants for the stock of five subsidiaries over which the corporation has voting control. Shortly before or after the options grants, the board transferred valuable assets and opportunities of the corporation to the subsidiaries. Plaintiff, a stockholder of the corporation, challenges the options and warrant grants as a breach of fiduciary duty. In addition, Plaintiff challenges a voting agreement that the corporation entered in connection with a private placement as illegal vote buying. Under the voting agreement, the private placement investor is required to vote its shares of the corporation as the corporation's board directs.

Defendants move to dismiss asserting that the business judgment rule should apply. They argue that the options and warrant grants are permissible director compensation for service on the boards of the subsidiaries and that the voting agreement is a means of ensuring that the private placement investor does not vote its shares against the corporation's interests. Defendants also move to stay in favor of an earlier-filed case in this Court. In this opinion, I deny Defendants' motion to dismiss because the options and warrant grants and the voting agreement are subject to entire fairness review, and Defendants have not carried their burden of proving entire fairness at this stage. Defendants' motion to stay is denied as moot because the earlier-filed case has settled.

2

## I.    BACKGROUND

The facts in this opinion derive from Plaintiff's Verified Class Action and Derivative Complaint (the "Complaint") and the documents it incorporates by reference.[1]

### A.    Parties and Relevant Non-Parties

Sorrento Therapeutics, Inc. is a Delaware corporation with its principal place of business in San Diego, California ("Sorrento"). Sorrento is in the business of biopharmaceutical development and marketing. The company's shares are publicly traded on the Nasdaq Capital Market under the ticker symbol SRNE.

Concortis Biosystems, Corp. ("Concortis"), TNK Therapeutics, Inc. ("TNK"), LA Cell, Inc. ("LA Cell"), Sorrento Biologics, Inc. ("Biologics"), and Scintilla Pharmaceuticals, Inc. ("Scintilla") are subsidiaries of Sorrento. Sorrento allegedly has voting control over each of the subsidiaries.

Plaintiff Yvonne Williams is a stockholder of Sorrento.

Defendants Henry Ji, William S. Marth, Kim D. Janda, Jaisim Shah, David H. Deming, and Douglas Ebersole were the Sorrento directors at the time of the challenged options and warrant grants and the voting agreement. By the time of the

---

[1]    *In re Morton's Rest. Gp., Inc. S'holders Litig.*, 74 A.3d 656, 659 n.3 (Del. Ch. 2013) ("To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents." (quoting *DeLuca v. AccessIT Gp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010)) (internal quotation marks omitted)).

Complaint, non-party Yue Alexander Wu had replaced Douglas Ebersole on the board.

Defendants George Ng and Jeffrey Su—officers of Sorrento—are named Defendants in the Complaint, but Plaintiff has voluntarily dismissed her claims against them.[2]

## B. Facts

### 1. The options and warrant grants

On March 15, 2016—five days before nominations were due for Sorrento directorships—Sorrento issued its form 10-K for the 2015 fiscal year, disclosing that Sorrento subsidiaries had granted a series of stock options and warrants to certain Sorrento personnel, directors, and consultants (the "Grants"). On April 29, 2016, after the deadline for director nominations had passed, Sorrento filed an amendment to the form 10-K, disclosing that all of the Sorrento directors were recipients of the Grants. The Sorrento stockholders did not approve the Grants. Only the Sorrento directors approved the Grants pursuant to the subsidiaries' stock option plans, and the Sorrento stockholders never approved the stock option plans.[3] The Sorrento directors also adopted or amended the certificates of incorporation of the five

---

[2] Pl.'s Answering Br. 1 n.1.

[3] The Sorrento stockholders had previously approved an equity compensation plan using shares of Sorrento stock.

4

subsidiaries to allow for the issuance of Class B stock with 10 to 1 voting rights. Those decisions were not approved by the Sorrento stockholders.

### a. Scintilla

In October 2015, Scintilla, a Sorrento subsidiary, granted options to purchase 1,600,000 shares of Scintilla common stock to the six Sorrento directors and a warrant to purchase 9,500,000 shares of Scintilla Class B stock with 10 to 1 voting rights to Defendant Ji. The options and the warrant had a $0.01 per share exercise price. Ten months later, on August 2, 2016, Sorrento, Scintilla, and Scilex Pharmaceuticals, Inc., a pharmaceutical development company, ("Scilex") agreed to a term sheet under which Scintilla would purchase all of the Scilex stock. The term sheet contemplated that upon the closing, Sorrento would contribute $10 million to Scintilla to fund working capital expenses. Ji currently owns 6.5% of Scilex's equity, which Scintilla would purchase under the term sheet. On August 15, 2016, Sorrento, Scintilla, and Semnur Pharmaceuticals, Inc. ("Semnur") agreed to a similar term sheet under which Scintilla would acquire all of the Semnur equity for a $60 million initial payment of Sorrento stock and cash. Defendant Shah is a director and Chief Executive Officer of Semnur and owns 5.5% of Semnur's outstanding stock.

### b. Biologics

In August 2015, Sorrento entered an exclusive license with Mabtech Limited ("Mabtech") to develop and sell four late-stage antibodies in the North American,

European, and Japanese markets. In October 2015, Sorrento transferred its rights under the Mabtech exclusive license to its subsidiary Biologics. In the same month, Biologics granted options to purchase 2,000,000 shares of Biologics common stock to the Sorrento directors with a $0.01 per share exercise price. Biologics also granted Defendant Ji a warrant to purchase 9,500,000 shares of Biologics Class B shares with 10 to 1 voting rights for $0.01 per share.

### c. LA Cell

In May 2015, LA Cell, a Sorrento subsidiary, granted options to purchase 1,700,000 shares of LA Cell common stock to the Sorrento directors and a warrant to purchase 9,500,000 shares of LA Cell Class B stock with 10 to 1 voting rights to Ji. The warrant and the options have an exercise price of $0.01 per share. The options and warrant give Ji the right to purchase over 18% of the economic interest and 25% of the voting interest in LA Cell. Subsequently on September 25, 2015, LA Cell entered an exclusive licensing agreement with City of Hope, a medical research center, under which LA Cell licensed to City of Hope certain technology that allows antibodies to target so-called "undruggable" disease-causing molecules. Sorrento announced that the total deal value with City of Hope could be in excess of $170 million.

6

### d.    Concortis

In 2013, Sorrento acquired Concortis in exchange for Sorrento stock worth $11 million. Concortis drove Sorrento's revenue growth in 2014, and the subsidiary filed five patent applications in 2013 and 2014. In October 2015, Concortis granted options to purchase 1,600,000 shares of Concortis common stock to the Sorrento directors and a warrant to purchase 9,500,000 shares of Concortis Class B stock with 10 to 1 voting rights to Ji. The options and the warrant had an exercise price of $0.25 per share.

### e.    TNK Therapeutics

On May 18, 2015, Sorrento founded TNK Therapeutics ("TNK") to focus on developing "CAR.TNK immunotherapies" for the treatment of cancer and infectious diseases. In the same month, TNK granted the Sorrento directors options to purchase 1,700,000 shares of TNK common stock and granted Ji a warrant to purchase 9,500,000 shares of TNK Class B stock with 10 to 1 voting rights. The options and the warrant had exercise prices of $0.01 per share. Sorrento and TNK then entered purchase agreements for TNK to acquire (1) all of the membership interests of CARgenix for $6 million in TNK common stock and (2) all of the stock of BDL Products, Inc. ("BDL") for $6 million in TNK common stock. Both of the purchase agreements provide that if TNK does not complete a financing of at least $50 million or an initial public offering before certain deadlines in 2016, the original owners of

7

CARgenix and BDL will become entitled to receive Sorrento common stock. On November 25, 2015, an analyst report issued by Brean Capital, LLC allegedly valued TNK at $1.3 billion.

Plaintiff alleges that the Grants from Scintilla, Biologics, LA Cell, Concoritis, and TNK were part of an illegal scheme to siphon assets from Sorrento for the benefit of self-interested Sorrento directors.

### 2. The voting agreement

Plaintiff also challenges a voting agreement (the "Yuhan Voting Agreement") that Sorrento entered with Yuhan Corporation ("Yuhan"). On April 5, 2016, Sorrento disclosed that it had agreed to enter into private placements with four investors to raise $150 million in exchange for approximately 45% of Sorrento's common stock (the "Private Placements"). The Private Placements closed on the record date for the upcoming annual meeting of stockholders, allegedly so that the Private Placement investors could vote for the incumbent board. One of the Private Placement investors, Yuhan, signed the Yuhan Voting Agreement as a condition to the closing of the Private Placements. Under the Yuhan Voting Agreement, Yuhan was required to vote its common shares as directed by the Sorrento board. Yuhan invested $10 million in Sorrento, and its shares constitute 2.75% of the outstanding Sorrento common shares. Plaintiff challenges the Yuhan Voting Agreement as

8

illegal managerial vote buying designed to disenfranchise the Sorrento stockholders in the 2016 director election and further entrench the board of directors.

## C.    Procedural History

On September 8, 2016, Plaintiff filed the Complaint challenging the Grants and the Yuhan Voting Agreement. Defendants moved to dismiss under Court of Chancery Rule 12(b)(6) for failure to state a claim and because Plaintiff's claims are not ripe.[4] Defendants also moved to stay in favor of an earlier-filed case in this Court arising out of the same facts. On January 26, 2017, the Court heard oral argument on the motions, and on March 21, 2017, Defendants filed a letter informing the Court that the earlier-filed case had settled. Plaintiff and Defendants filed letters in which they disagreed about whether the settlement mooted certain issues in this case. On April 17, 2017, Defendants requested that the Court grant a revised schedule under which Plaintiff would file an amended complaint and Defendants would respond to that complaint by August 30, 2017. Plaintiff requested that the Court decide the motion to dismiss. On May 31, 2017, the Court denied Defendants' proposed schedule and determined that the motion to dismiss would be decided on the arguments and submissions submitted to date.

---

[4]    The Complaint also alleges that demand on the Sorrento board for its derivative claims would be futile because five of the six current directors were interested in the challenged transactions as direct recipients of the Grants and beneficiaries of the entrenching Private Placements. Defendants do not move to dismiss under Rule 23.1.

9

## II.    ANALYSIS

On a Rule 12(b)(6) motion to dismiss, "all well-pleaded factual allegations are accepted as true,"[5] and the Court must draw all reasonable inferences in favor of the plaintiff.[6]  The motion can be granted only if the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[7]  "A party is entitled to dismissal of the complaint only where it is clear from its allegations that the plaintiff would not be entitled to relief under any set of facts that could be proven to support the claim."[8]

### A.    Plaintiff's Claims Are Ripe for Review

Defendants argue that both Plaintiff's options-grant and vote-buying claims are not ripe.  As to the options-grant claim, Defendants argue that the speculative future value of the Sorrento subsidiaries renders Plaintiff's claim unripe because the future value of the director compensation cannot be determined at this time.  Citing this Court's opinion in *In re Allergan, Inc. Stockholder Litigation*,[9] Defendants argue that the vote-buying claim is unripe because the 2.75% of the vote that the board

---

[5]    *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006).

[6]    *Id.*

[7]    *Id.* (quoting *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 897 (Del. 2002)).

[8]    *Hewlett v. Hewlett-Packard Co.*, 2002 WL 549137, at *1 (Del. Ch. Apr. 8, 2002).

[9]    2014 WL 5791350 (Del. Ch. Nov. 7, 2014).

allegedly illegally bought has not yet been outcome determinative in any vote. Those arguments fail.

Delaware courts do not exercise jurisdiction over claims that are not ripe.[10] Ripe claims are those that have "matured to a point where judicial action is appropriate."[11] The Delaware Supreme Court has summarized the ripeness inquiry as follows:

> A ripeness determination requires a common sense assessment of whether the interests of the party seeking immediate relief outweigh the concerns of the court "in postponing review until the question arises in some more concrete and final form." Generally, a dispute will be deemed ripe if "litigation sooner or later appears to be unavoidable and where the material facts are static."[12]

In this case, the options and warrants have been granted, and the voting agreement has been executed. Whether the Grants and the Yuhan Voting Agreement constitute a breach of fiduciary duty owed to Sorrento and its stockholders can be determined on a record developed from currently available evidence.

The precise value of the Grants may remain speculative, as Defendants assert. But that argument is properly directed to the merits of Plaintiff's claim, not to

---

[10]   *Stroud v. Milliken Enters., Inc.*, 552 A.2d 476, 480 (Del. 1989).

[11]   *XI Specialty Ins. Co. v. WMI Liquidating Tr.*, 93 A.3d 1208, 1217 (Del. 2014) (quoting *Stroud*, 552 A.2d at 480).

[12]   *Id.* at 1217-18 (quoting *Stroud*, 552 A.2d at 480; *Julian v. Julian*, 2009 WL 2937121, at *3 (Del. Ch. Sept. 9, 2009)).

ripeness. This case is not unripe merely because there exist valuation questions with respect to the Grants.

As to the Yuhan Voting Agreement, *Allergan* is distinguishable. In *Allergan*, the plaintiffs sought, in part, a declaratory judgment regarding the interpretation of a corporate bylaw. The Court held that the claim was unripe because it sought an advisory opinion regarding how the bylaw would apply in a hypothetical situation that had not yet arisen.[13] Here, in contrast, Plaintiff challenges the Yuhan Voting Agreement itself as a breach of fiduciary duty. Even though the Yuhan Voting Agreement has not yet dictated the outcome of any specific vote, the Court can determine now whether the board's decision to enter the agreement constituted a breach of fiduciary duty. Plaintiff's claims, thus, are ripe for adjudication.

## B. Plaintiff's Challenge to the Options and Warrant Grants States a Claim for Relief

Defendants argue that Plaintiff's challenge to the Grants does not state a claim for breach of fiduciary duty because compensating directors for their service to a subsidiary is permissible under Delaware law, and the business judgment rule applies to executive compensation decisions. Defendants alternatively argue that even if entire fairness review applies, Plaintiff has not adequately pled that the Grants were unfair.

---

[13] *Allergan*, 2014 WL 5791350, at \*9.

Directors may be compensated for additional service in managing subsidiaries. And "where . . . there is no reasonable doubt as to the disinterest of or absence of fraud by the [b]oard, mere disagreement cannot serve as grounds for imposing liability based on alleged breaches of fiduciary duty . . . ."[14] But "[s]elf-interested compensation decisions made without independent protections are subject to the same entire fairness review as any other interested transaction."[15]

"Entire fairness can be proved only where the directors 'demonstrate their utmost good faith and the most scrupulous inherent fairness of the bargain.'"[16] To prove entire fairness, Defendants must prove both fair dealing and fair price.[17] The fair dealing inquiry addresses the "questions of when the transaction was timed, how it was initiated, structured, negotiated, disclosed to the directors, and how the approvals of the directors and the stockholders were obtained."[18] The fair price aspect of the test ensures that the transaction was substantively fair by examining "the economic and financial considerations."[19] The entire fairness standard of

---

[14] *Brehm v. Eisner*, 746 A.2d 244, 266 (Del. 2000).

[15] *Valeant Pharm. Int'l v. Jerney*, 921 A.2d 732, 745 (Del. Ch. 2007).

[16] *Id.* at 746 (quoting *Weinberger v. UOP, Inc.*, 457 A.2d 701, 710 (Del. 1983)).

[17] *Weinberger*, 457 A.2d at 711.

[18] *Id*.

[19] *Id.*

review "normally will preclude dismissal of a complaint on a Rule 12(b)(6) motion to dismiss."[20] And in a claim for excessive compensation where the plaintiff has adequately pled that the board lacked independence, "plaintiffs need only allege some specific facts suggesting unfairness in the transaction in order to shift the burden of proof to defendants to show that the transaction was entirely fair."[21]

The Sorrento board approved the Grants, and every member of the board at the time of the Grants was interested in them, as Ji, Marth, Janda, Shah, Deming, and Ebersole all received options. Thus, entire fairness review applies, and as long as Plaintiff has pled "some specific facts suggesting unfairness"[22] in the options and warrant grants, Defendants have the burden of proving that the Grants were entirely fair.

The Complaint adequately alleges both an unfair process and unfair prices for the Grants. As to process, Plaintiff alleges that no one other than the interested directors ever independently approved the Grants.[23] Further, on March 15, 2016, only five days before director nominations were due to the board, Sorrento disclosed for the first time that it had caused the subsidiaries to issue the Grants. Sorrento did

---

[20] *Orman v. Cullman*, 794 A.2d 5, 20 n.36 (Del. Ch. 2002).

[21] *In re Tyson Foods, Inc.*, 919 A.2d 563, 589 (Del. Ch. 2007).

[22] *Id.*

[23] Compl. ¶ 65.

14

not disclose that all of the directors participated in the Grants until April 29, 2016. The Grants were also timed soon before or after Sorrento transferred valuable assets or opportunities to the subsidiaries. And while Defendants argue that the Grants were "routine compensation pursuant to the subsidiaries' stock option plans,"[24] the Grants were not disclosed as non-executive directors' compensation in the Sorrento 2016 proxy statement.[25] Instead, they were disclosed as related-party transactions.[26] Those allegations give rise to at least a reasonably conceivable inference of unfair process.

As to price, the Complaint alleges that Defendant Ji alone was granted the right to acquire 25% of the voting power of LA Cell and 18% of its economic value. The Complaint also alleges that Sorrento disclosed that the LA Cell deal with City of Hope could be worth in excess of $170 million. Taken as true, the value of that compensation, especially as a percentage of the value of LA Cell, is large enough to sufficiently plead that the Grants were excessive. In *Steiner v. Meyerson*, then-Chancellor Allen denied a motion to dismiss a challenge to far less compensation where the entire fairness standard of review applied.[27] To accept Defendants'

---

[24] Defs.' Opening Br. 28.

[25] Compl. ¶¶ 24, 34, 49, 60.

[26] Defs.' Reply Br. Ex. 4, at 49-50 (Sorrento Proxy Statement (May 17, 2016)).

[27] *Steiner v. Meyerson*, 1995 WL 441999, at *7 (Del. Ch. July 19, 1995) ("While [$20,000 per year for board service plus payments for committee meetings] seem[s]

15

argument that the Grants were fair compensation for additional services to the Sorrento subsidiaries would improperly draw an inference in Defendants' favor.[28] Defendants must prove that the Grants were entirely fair to Sorrento, which they have not done at this stage.[29]

## C. Plaintiff's Challenge to the Yuhan Voting Agreement States a Claim for Relief

Defendants also argue that Plaintiff's challenge to the Yuhan Voting Agreement fails to state a claim. They assert that Section 218(c) of the Delaware

---

quite within a range that could be paid in good faith by a company seeking to attract competent, committed directors, I cannot, under the more demanding fairness analysis applicable to fiduciary duty claims, now conclude that there is no state of facts consistent with the allegations that would entitle plaintiff to relief on this claim.").

[28] Defendants cite Vice Chancellor Laster's recent transcript ruling in *Oldfather v. Ells*, C.A. No. 12118-VCL, at 39 (Del. Ch. Dec. 7, 2016) (TRANSCRIPT), to argue that even if entire fairness review applies, Plaintiff's challenge to the Grants should be dismissed. Vice Chancellor Laster in *Oldfather* stated, "I cannot conceive of a setting where I would rule that this level of compensation to directors of a public corporation, under the circumstances described in the complaint, fails the entire fairness test." *Id.* But he acknowledged that "[i]n a situation where, frankly, the numbers were bigger or different, one might credit" an "inference of unfairness." *Id.* Here, taking as true the facts in the Complaint, it is reasonably conceivable that the Grants were unfair.

[29] *See In re Tyson Foods, Inc.*, 919 A.2d 563, 589 (Del. Ch. 2007) ("[P]laintiffs must show either that the board or committee that approved the compensation lacked independence (in which case the burden shifts to the defendant director to show that the compensation was objectively reasonable), or to plead facts sufficient to show that the board or committee lacked good faith in making the award. Assuming that this standard is met, plaintiffs need only allege some specific facts suggesting unfairness in the transaction in order to shift the burden of proof to defendants to show that the transaction was entirely fair.").

General Corporation Law explicitly authorizes the type of voting agreement entered with Yuhan and that the business judgment rule should apply to the voting agreement. Defendants contend that I must consider the context in which the Yuhan Voting Agreement was entered. They assert that the purpose of the agreement was to prohibit Yuhan, a Sorrento competitor, from obtaining a competitive advantage by voting against Sorrento's interests. Further, Defendants argue that the 2.75% of the Sorrento common stock that is subject to the Yuhan Voting Agreement has not been outcome determinative in any stockholder vote and is not material to the control of Sorrento. Defendants contend that the 2016 director election was uncontested, and no stockholder voted against the slate of directors. They rely on *Weinberger v. Bankston*[30] for the proposition that when one aspect of a transaction is a voting agreement covering a relatively small percentage of a corporation's shares, the immateriality of the voting agreement is evidence that the purpose of the agreement was not to disenfranchise the stockholders.

This Court held in *Schreiber v. Carney* that "an agreement involving the transfer of stock voting rights without the transfer of ownership is not necessarily illegal and each arrangement must be examined in light of its object or purpose."[31] A vote-buying agreement is not "considered to be illegal *per se* unless the object or

---

[30]    1987 WL 20182 (Del. Ch. Nov. 19, 1987).

[31]    *Schreiber v. Carney*, 447 A.2d 17, 25 (Del. Ch. 1982).

17

purpose is to defraud or in some way disenfranchise the other stockholders."[32]  In addition, "[b]ecause vote-buying is so easily susceptible of abuse it must be viewed as a voidable transaction subject to a test for intrinsic fairness."[33]  In *Hewlett v. Hewlett-Packard Co.*, this Court further clarified that Section 218(c) applies to voting agreements "between 2 or more stockholders"[34] and allows stockholders to "do whatever they want with their votes, including selling them to the highest bidder."[35]  But management may not use corporate assets to buy votes "unless it can be demonstrated, as it was in *Schreiber*, that management's vote-buying activity does not have a deleterious effect on the corporate franchise."[36]  Here, Sorrento's directors allegedly made the voting agreement a condition of a Sorrento capital raise and, thus, used corporate assets to buy the Yuhan votes.  As such, Defendants must prove that the agreement is intrinsically fair and not designed to disenfranchise Sorrento stockholders.[37]

---

[32]    *Id.* at 25-26.

[33]    *Id.* at 26.

[34]    8 *Del. C.* § 218(c).

[35]    *Hewlett v. Hewlett-Packard Co.*, 2002 WL 549137, at *4 (Del. Ch. Apr. 8, 2002).

[36]    *Id.*

[37]    *Schreiber*, 447 A.2d at 25-26.

18

Plaintiff asserts that the Sorrento board approved the Yuhan Voting Agreement for the purpose of disenfranchising the stockholders. As evidence, Plaintiff alleges that the board "handpicked" Yuhan as an investor in the Private Placements and entered the Yuhan Voting Agreement on the record date for a director election, allowing management to vote the shares subject to the agreement. Defendants are correct that, like in *Weinberger*, only a small percentage of the vote is at issue, and the voting agreement was negotiated as part of a larger agreement. But unlike *Weinberger*, this is a motion to dismiss rather than a motion for summary judgment. And I do not have the benefit of a more complete record on which to hold that there are "no facts indicating that the purpose of the settlement was to defraud or disenfranchise stockholders."[38] Defendants' arguments regarding the purpose of the Yuhan Voting Agreement and the ultimate outcome of the 2016 director election would require that I take inferences in their favor, which I cannot do at this stage. Instead, taking all reasonable inferences in Plaintiff's favor, the Complaint adequately alleges a disenfranchisement purpose, shifting the burden of proving that the agreement was intrinsically fair to Defendants, which the Defendants have not

---

[38]    *Weinberger v. Bankston*, 1987 WL 20182, at *4 (Del. Ch. Nov. 19, 1987); *see also Portnoy v. Cryo-Cell Int'l, Inc.*, 940 A.2d 43, 76 (Del. Ch. 2008) ("Although a change in the voting of the Saneron bloc alone would not have turned the election, Walton's improper conduct and its non-disclosure contributes to my overall sense that the election was tainted by misbehavior by insiders who could not win an election simply using the traditionally powerful advantages afforded incumbents.").

19

done through their motion to dismiss. Plaintiff has alleged a reasonably conceivable case, which survives this Rule 12(b)(6) motion to dismiss.

### D. Defendants' Motion to Stay Is Denied

Defendants also move to stay this case pending the resolution of an earlier-filed action in this Court.[39] On March 21, 2017, counsel for Defendants informed the Court of a proposed settlement of the Wildcat Action. In light of that settlement, the motion to stay is denied.

## III. CONCLUSION

For the reasons stated herein, Defendants' motions to dismiss and to stay are denied.

**IT IS SO ORDERED.**

---

[39] *See Wildcat Liquid Alpha, LLC v. Ji*, C.A. No. 12338-VCMR.