# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ENERGY TRANSFER EQUITY, L.P., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | C.A. No. N19C-11-009 EMD CCLD |
| v. | ) | |
| | ) | |
| TWIN CITY FIRE INSURANCE CO., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Submitted: June 24, 2020
Decided: September 28, 2020

*Upon Moving Defendants' Motion to Dismiss Pursuant to Civil Rule 12(b)(1)*
***DENIED***

Jennifer C. Wasson, Esquire, Carla M. Jones, Esquire, Potter Anderson & Corroon LLP, Wilmington, Delaware, Robin L. Cohen, Esquire, Adam Ziffer, Esquire, David Dehoney, Esquire, McKool Smith, P.C., New York, New York. *Attorneys for Plaintiffs Energy Transfer Equity L.P., Regency GP LP, and Regency GP LLC.*

Robert J. Katzenstein, Esquire, Robert K. Beste, Esquire, Smith, Katzenstein & Jenkins LLP, Wilmington, Delaware, David Newmann, Esquire, Jason M. Russell, Esquire, Hogan Lovells US LLP, Philadelphia, Pennsylvania. *Attorneys for Defendant ACE Insurance Company.*

Robert J. Katzenstein, Esquire, Robert K. Beste, Esquire, Smith, Katzenstein & Jenkins LLP, Wilmington, Delaware, Thomas J. Judge, Esquire, Dykema Gossett PLLC, Washington, D.C. *Attorneys for Defendant Travelers Casualty and Surety Company of America.*

Robert J. Katzenstein, Esquire, Robert K. Beste, Esquire, Smith, Katzenstein & Jenkins LLP, Wilmington, Delaware, Michael R. Goodstein, Esquire, Bailey Cavalieri LLC, Columbus, Ohio. *Attorneys for Defendant Old Republic Insurance Company.*

Marc S. Casarino, Esquire, White & Williams LLP, Wilmington, Delaware, Erica J. Kerstein, Esquire, Phyllis A. Ingram, Esquire, White & Williams, New York, New York. *Attorneys for Defendants Arch Insurance Company and Alterra America Insurance Company n/k/a Pinnacle National Insurance Company.*

Thaddeus J. Weaver, Esquire, Dilworth Paxson LLP, Wilmington, Delaware. *Attorney for Defendant RSUI Indemnity Company.*

Thomas G. Macauley, Esquire, Macauley LLC, Wilmington, Delaware. *Attorney for Defendant Beazley Insurance Company, Inc.*

**DAVIS, J.**

**I.     INTRODUCTION**

This insurance coverage dispute is assigned to the Complex Commercial Litigation Division of the Court.  On November 1, 2019, Plaintiffs Energy Transfer Equity, L.P. ("Energy Transfer"), Regency GP LP, and Regency GP LLC (collectively, the "Insureds") filed a Complaint asserting claims against Defendants Twin City Fire Insurance Co. ("Twin City"), Zurich American Insurance Company ("Zurich"), Associated Electric & Gas Insurance Services Limited("Associated Electric"), U.S. Specialty Insurance Company ("U.S. Specialty"), Illinois National Insurance Company ("Illinois National"), RSUI Indemnity Company ("RSUI"), Axis Insurance Company ("Axis"), Old Republic Insurance Company ("Old Republic"), Allied World National Assurance Company ("Allied World"), Navigators Insurance Company ("Navigators"), Arch Insurance Company ("Arch"), ACE American Insurance Company ("ACE"), XL Specialty Insurance Company (XL Specialty"), Alterra America Insurance Company ("Alterra"), Berkley Insurance Company ("Berkley"), Beazley Insurance Company, Inc. ("Beazley"), and Travelers Casualty and Surety Company of America ("Travelers") (collectively, "Insurance Defendants").[1] Through the Complaint, the Insureds seek: (i) declaratory relief concerning a duty to indemnify (Count II);[2] and (ii) damages for anticipatory breach of contract arising out of the Insurance Defendants purported repudiation under the directors' and officers' insurance policies issued by the Insurance Defendants to the Insureds (Count I).[3]

---

[1] D.I. No. 1.
[2] Compl. ¶¶ 59-63.
[3] Id. ¶¶ 64-70.

2

On January 31, 2020, Defendants ACE, Travelers Casualty, Old Republic, Arch, Alterra, RSUI, and Beazley (collectively, the "Moving Insurers") filed a Motion to Dismiss under Superior Court Civil Rule 12(b)(1) (the "Motion").[4] The Insureds filed a Plaintiffs' Opposition to the Moving Insurers' Rule 12(b)(1) Motion to Dismiss (the "Opposition") on March 16, 2020.[5] The Moving Insurers, on April 14, 2020, filed a Reply Brief Supporting Moving Defendants' Motion to Dismiss Pursuant to Civil Rule 12(b)(1) (the "Reply").[6] The Court held a hearing on the Motion, the Opposition and the Reply on June 24, 2020.[7] At the end of the hearing, the Court took the Motion under advisement.

For the reasons stated below, the Motion is **DENIED**.

## II.  FACTS[8]

### A.  GENERAL BACKGROUND

Energy Transfer is one of the largest midstream energy companies in the United States.[9] Energy Transfer and Regency GP LP are limited partnerships organized and existing under the laws of Delaware.[10] Regency GP LLC is a limited liability company organized and existing under the laws of the State of Delaware.[11] Regency GP LP is the general partner of Regency Energy Partners LP ("Regency").[12] Regency GP LLC is the general partner of Regency GP LP.[13]

---

[4] D.I. No. 72.
[5] D.I. No. 77.
[6] D.I. No. 79.
[7] D.I. No. 98.
[8] Unless otherwise state, the facts are derived from the Complaint.
[9] Compl. ¶ 5.
[10] *Id*. ¶¶ 5-6.
[11] *Id*. ¶ 7.
[12] *Id*. ¶ 2,
[13] *Id*.

3

Twin City is an Indiana corporation with its principal place of business in Connecticut.[14] Zurich is a New York corporation with its principal place of business in Illinois.[15] Aegis is a Bermuda corporation with its principal place of business in New Jersey.[16] U.S. Specialty is a Texas corporation with its principal place of business in Texas.[17] Illinois National is an Illinois corporation with its principal place of business in Illinois.[18] RSUI is a New Hampshire corporation with its principal place of business in Georgia.[19] AXIS is an Illinois corporation with its principal place of business in Georgia.[20] Old Republic is a Pennsylvania corporation with its principal place of business in Illinois.[21] Allied World is a New Hampshire corporation with its principal place of business in New York.[22] Navigators is a New York corporation with its principal place of business in Connecticut.[23] Arch is a Missouri corporation with its principal place of business in Pennsylvania.[24] ACE is a Pennsylvania corporation with its principal place of business in Pennsylvania.[25] XL Specialty is a Delaware corporation with its principal place of business in Connecticut.[26] Alterra is a Delaware corporation with its principal place of business in Virginia.[27] Berkley is a Delaware corporation with its principal place of business in Connecticut.[28] Travelers is a Connecticut corporation with its principal place of business in

---

[14] *Id.* ¶ 8.
[15] *Id.* ¶ 9.
[16] *Id.* ¶ 10.
[17] *Id.* ¶ 11.
[18] *Id.* ¶ 12.
[19] *Id.* ¶ 13.
[20] *Id.* ¶ 14.
[21] *Id.* ¶ 15.
[22] The Complaint alleged that Allied World is also a Delaware corporation. Compl. at ¶ 16. Allied World contends it is no longer a Delaware corporation.
[23] Compl. ¶ 17.
[24] *Id.* ¶ 18.
[25] *Id.* ¶ 19.
[26] *Id.* ¶ 20.
[27] *Id.* ¶ 21.
[28] *Id.* ¶ 22.

Connecticut.[29]  Upon information and belief, the Insureds allege that all Insurance Defendants are authorized to sell or write insurance in Delaware and, at all material times, have conducted and continue to conduct substantial insurance business in Delaware.[30]

Energy Transfer has one of the largest portfolios of energy assets in the United States, with assets covering 38 states.[31]  Energy Transfer's core operations include transportation and storage of natural gas, crude oil, and other energy products.[32]  Energy Transfer owns and operates one of the largest pipeline systems in the United States, transmitting natural gas and other energy products across thousands of miles of pipeline connecting various production areas to markets across the United States and Canada.[33]  At the time of the merger transaction, Regency was a master limited partnership, providing midstream services in high natural gas producing areas of the country.[34]  These services included the gathering and processing, compression, treatment, and transportation of natural gas in a number of states.[35]

## B.  INSURANCE POLICIES

As part of its risk management programs, Energy Transfer annually purchased insurance, including director & officer ("D&O") insurance.[36]  Energy Transfer obtains insurance to protect Energy Transfer and its subsidiaries against third-party claims alleging wrongful conduct on the part of Energy Transfer and its subsidiaries.[37]  Energy Transfer's D&O insurance coverage tower in effect from February 28, 2014 to February 28, 2015 provides $170 million in Side C (entity)

---

[29] *Id.* ¶ 24.
[30] *Id.* ¶¶ 8-24.
[31] *Id.* ¶ 28.
[32] *Id.*
[33] *Id.*
[34] *Id.* ¶ 29.
[35] *Id.*
[36] *Id.* ¶ 30.
[37] *Id.*

coverage in 17 layers of insurance, all in excess of a $3.5 million self-insured retention.[38]  Except as otherwise specified, all excess policies within the coverage tower "follow form" to Policy No. 00-DA-0228176-14 sold by the primary carrier, Twin City (the "Twin City Policy").[39]  As alleged in the Complaint, "[f]ollow form" means that, aside from attachment points and limits of liability, the excess policies incorporate and adopt the terms, conditions, definitions, and exclusions of the Twin City Policy. [40]

The Insurance Defendants have disputed their obligation to pay any damages in connection with the *Dieckman* Action (discussed below) under the following Policies:[41]

- The Twin City Policy, issued by Twin City, with a $10 million limit;[42]

- second-layer excess Policy No. DOC 5964643 06, issued by Zurich American with limits of $10 million in excess of $10 million;[43]

- third-layer excess Policy No. DX1001114P, issued by Aegis with limits of $10 million in excess of $20 million;[44]

- fourth-layer excess Policy No. 14-MGU-14-A31330, issued by U.S. Specialty with limits of $10 million in excess of $30 million;[45]

- fifth-layer excess Policy No. 02-381-01-85, issued by Illinois National with limits of $10 million in excess of $40 million;[46]

- sixth-layer excess Policy No. HS656241, issued by RSUI with limits of $10 million in excess of $50 million;[47]

- seventh-layer excess Policy No. MCN730719/01/2014, issued by AXIS with limits of $10 million in excess of $60 million;[48]

---

[38] *Id*. ¶ 31.
[39] *See id.* ¶ 32; Compl. Ex. A.
[40] *Id*. ¶ 32.
[41] *Id*. ¶ 33.
[42] *Id*. ¶ 33(a).
[43] *See* Compl. Ex. B.
[44] *See* Compl. Ex. C.
[45] *See* Compl. Ex. D.
[46] *See* Compl. Ex. E.
[47] *See* Compl. Ex. F.
[48] *See* Compl. Ex. G.

- eighth-layer excess Policy No. CUG 36509, issued by Old Republic with limits of $10 million in excess of $70 million;[49]

- ninth-layer excess Policy No. 0305-2630, issued by Allied World with limits of $10 million in excess of $80 million;[50]

- tenth-layer excess Policy No. CH14DOL313510IV, issued by Navigators with limits of $10 million in excess of $90 million;[51]

- eleventh-layer excess Policy No. DOX 9300155-00, issued by Arch with limits of $10 million in excess of $100 million;[52]

- twelfth-layer excess Policy No. DOX G25592724 004, issued by ACE with limits of $10 million in excess of $110 million;[53]

- thirteenth-layer excess Policy No. ELU133333-14, issued by XL with limits of $10 million in excess of $120 million;[54]

- fourteenth-layer excess Policy No. MAXA6EL0001635, issued by Alterra with limits of $10 million in excess of $130 million;[55]

- fifteenth-layer primary Policy No. 18009514, issued by Berkley with limits of $10 million in excess of $140 million;[56]

- sixteenth-layer excess Policy No. V15QYP140701, issued by Beazley with limits of $10 million in excess of $150 million;[57] and

- seventeenth-layer excess Policy No. 106066639, issued by Travelers with limits of $10 million in excess of $160 million.[58]

The Twin City Policy contains an exclusion provision that the Insurance Defendants have raised in their dispute with the Insureds.[59] In particular, Section V(D)(3) of the Twin City Policy provides:

---

[49] *See* Compl. Ex. H.
[50] *See* Compl. Ex. I.
[51] *See* Compl. Ex. J.
[52] *See* Compl. Ex. K.
[53] *See* Compl. Ex. L.
[54] *See* Compl. Ex. M.
[55] *See* Compl. Ex. N.
[56] *See* Compl. Ex. O.
[57] *See* Compl. Ex. P.
[58] *See* Compl. Ex. Q.
[59] *Id.* ¶ 45.

Pursuant to Section VII., ALLOCATION OF DAMAGES, the Insurer shall not pay Damages:

. . . .

(3) under Insuring Agreement (B) or (C) that represent the amount by which the purchase price or consideration is effectively increased in connection with a Claim alleging that the price or consideration paid or proposed to be paid in a transaction involving all or substantially all of the ownership interests in or assets of an entity is inadequate, or plaintiff counsel fees and costs arising out of such Claim.[60]

## C. THE *DIECKMAN* ACTION

On or about June 10, 2015, a class of unitholders in Regency filed a class action lawsuit, *Dieckman v. Regency GP LP, et al.*, Case No: 11130-CB, D (the "*Dieckman* Action"), against, among others, Regency GP LP and Regency GP LLC, alleging breach of the Regency limited partnership agreement.[61] According to the Amended Complaint in the *Dieckman* Action,[62] Energy Transfer Partner's acquisition by merger of Regency violated the Regency limited partnership agreement because of undisclosed conflicts of interest in the merger approval process, inadequate negotiations, inadequate consideration of Regency's standalone prospects, and an improper dilution of Regency's profits after the acquisition.[63] The defendants in the *Dieckman* Action dispute the *Dieckman* plaintiff's claim for relief.[64] The underlying plaintiff alleged four causes of action, one of which survived a motion to dismiss: breach of contract by Regency GP LP and Regency GP LLC for breach of the Regency limited partnership agreement.[65] The *Dieckman* plaintiff is seeking approximately $2 billion in damages, interest, and fees.[66] Energy Transfer has defended the *Dieckman* Action for more than four years and trial took place in December of 2019.[67] Argument for post-trial briefing took place on May 6,

---

[60] *Id.* ¶ 46.
[61] *Id.* ¶ 47.
[62] *See* Compl. Ex. R.
[63] *Id.* ¶ 48.
[64] *Id.*
[65] *Id.*
[66] *Id.* ¶ 49.
[67] *Id.*

2020.[68]  The Court of Chancery requested additional briefing on August 25, 2020.[69]  The parties submitted the additional briefing on September 15, 2020.[70]

Energy Transfer timely notified all of its 2014-2015 coverage tower insurers of the *Dieckman* Action.[71]  Twin City, the primary insurer, agreed to pay defense costs in excess of the retention amount, but has disputed its obligation to pay for damages that the Insureds may incur in connection with any settlement of or judgment in the *Dieckman* Action.[72]  The other Insurance Defendants have adopted Twin City's coverage position and on that basis denied any obligation to pay damages that the Insureds may incur in connection with any settlement of or judgment in the *Dieckman* Action.[73]

The Insureds allege that the *Dieckman* Action constitutes a "Securities Claim" within the meaning of the Policies because the underlying claims are brought by unitholders of Regency, a defined Entity under the Twin City Policy.[74]  The Insureds contend that the *Dieckman* Action plaintiff asserts a "Wrongful Act" in the form of alleged misstatements, omissions, and breaches of duties.[75]  The Insureds then allege that any obligation to pay the underlying plaintiff or class as a result of a settlement or judgment would be "Damages," constituting a "Loss" under the Twin City Policy.[76]  The Insureds, therefore, assert that the Insurance Defendants' coverage obligations are triggered under Insuring Agreement I(C).[77]

---

[68] *See Dieckman v. Regency GP LP, et al.*, Case No:  11130-CB, D.I. No. 317 ("*Dieckman* D.I. No.__").
[69] *Dieckman* D.I. No. 319.
[70] *Dieckman* D.I. Nos. 320 and 321.
[71] *Id*. ¶ 50.
[72] *Id*. ¶ 51.
[73] *Id*. ¶ 52.
[74] *Id*. ¶ 53.
[75] *Id*.
[76] *Id*.
[77] *Id*.

The Complaint provides that the Insurance Defendants assert that coverage is barred by Section V(D)(3) of the Twin City Policy.[78] The Insureds allege that the Insurance Defendants have improperly denied coverage.[79] The Insureds allege that the harm alleged by the *Dieckman* Action plaintiffs are not limited to a demand for an increase in consideration for the merger transaction.[80]

The Insurance Defendants have also objected to payment or coverage for such damages on the ground that it would constitute uninsurable disgorgement.[81] The Insureds allege that the Policy has an exclusion that would bar coverage for disgorgement, but only to the extent there is a final and nonappealable adjudication in the underlying action establishing that the Insureds wrongly gained personal profit.[82] Moreover, in the absence of such an adjudication, a claim for disgorgement is covered.[83] Accordingly, the Insureds claim that even if these damages did constitute disgorgement, the Insurance Defendants' defense would be meritless.[84]

Seven of the Insurance Defendants have filed answers to the Complaint.[85] Recently, the Court denied a motion to dismiss for lack of personal jurisdiction filed by Twin City, Allied World, and Navigators.[86]

## III.    PARTIES' CONTENTIONS

### A.  THE MOVING INSURERS

The Moving Insurers contend that the Insureds fail to meet their burden to prove there is a ripe controversy for adjudication that would invoke the duty to indemnify.  The Moving

---

[78] *Id.* ¶ 54.
[79] *Id.* ¶ 55.
[80] *Id.* ¶ 57.
[81] *Id.* ¶ 58.
[82] *Id.*
[83] *Id.*
[84] *Id.*
[85] D.I. Nos. 62 through 70.
[86] D.I. No. 101.

Insurers also argue that the Complaint is based on an uncertain future event pertaining to an entry of settlement or award of damages in the *Dieckman* Action.

### B.  THE INSUREDS

The Insureds oppose the Motion, arguing that the Complaint asserts justiciable claims. The Insureds claim that the Complaint establishes a sufficient basis to conclude that the relevant Policies are implicated in the *Dieckman* Action.  In addition, the Insureds contend that the Complaint satisfies the factors set out in *Schick Inc. v. Amalgamated Clothing & Textile Workers Union*[87](the "*Schick* Factors").  The Insureds argue that the non-insurance cases cited by Moving Insurers do not apply here.  Finally, the Insureds claim that the parties' disputes are interests are real, adverse and, therefore, litigable.

## IV.     STANDARD OF REVIEW

Upon a motion to dismiss, the Court (i) accepts all well-pleaded factual allegations as true, (ii) accepts even vague allegations as well-pleaded if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[88]  However, the court must "ignore conclusory allegations that lack specific supporting factual allegations."[89]

"Unlike the standards employed in Rule 12(b)(6) analysis, the guidelines for the Court's review of [a] Rule 12(b)(1) motion are far more demanding of the non-movant.  The burden is on

---

[87] 533 A.2d 1235, 1239 (Del. Ch. 1987)
[88] *See Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 227 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Academy,* No. 09C-09-136, 2010 WL 5825343, at *3 (Del. Super. Oct. 27, 2010).
[89] *Ramunno v. Crawley,* 705 A.2d 1029, 1034 (Del. 1998).

11

the Insureds to prove jurisdiction exists. Further, the Court need not accept Insureds factual allegations as true and is free to consider facts not alleged in the complaint."[90]

## V.    DISCUSSION

"Delaware courts decline to exercise jurisdiction over a case unless the underlying controversy is ripe, *i.e.*, has 'matured to a point where judicial action is appropriate.'"[91]  A motion to dismiss based on lack of ripeness is thus "properly considered under Superior Court Civil Rule 12(b)(1)[.]"[92]  Jurisdiction to award declaratory relief exists when there is an "actual controversy" between the parties.[93]  For an "actual controversy" to exist, the controversy must: (i) involve the rights or other legal relations of the party seeking declaratory relief; (ii) be one in which the claim of right or other legal interest is asserted against one who has an interest in contesting the claim; (iii) be between parties where interests are real and adverse; and (iv) be ripe for judicial declaration.[94]

To determine whether a case ripe for judicial review, the Court must undertake "a common sense assessment of whether the interests of the party seeking immediate relief outweigh the concerns of the court in postponing review until the question arises in some more concrete and final form."[95]  The Court's discretion in making this common sense determination is guided by the following factors, which are referred to as the *Schick* Factors:

(1) a practical evaluation of the legitimate interests of the plaintiff in a prompt resolution of the question presented;

(2) the hardship that further delay may threaten;

---

[90] *Appriva S'holder Litig. Co. v. EV3, Inc.*, 937 A.2d 1275, 1284 n.14 (Del. 2007).
[91] *XL Specialty Ins. Co. v. WMI Liquidating Tr.*, 93 A.3d 1208, 1217 (Del. 2014) (quoting *Stroud v. Milliken Enters.*, 552 A.2d 476, 480 (Del. 1989)).
[92] *Homeland Ins. Co. v. Corvel Corp.*, 2011 WL 7122367, at *3 (Del. Super. Nov. 30, 2011).
[93] *Id.*
[94] *Id.* (citations omitted).
[95] *XL Specialty*, 93 A.3d at 1217; *see also Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co.*, 623 A.2d 1133, 1137 (Del. Super. 1992) ("ripeness . . . is now very much a matter of practical common sense[.]") (citations omitted).

12

(3) the prospect of future factual development that might affect the determination made;

(4) the need to conserve scarce resources; and

(5) a due respect for identifiable policies of law touching upon the subject matter in dispute.[96]

In applying the Schick Factors, this Court should "liberally exercise[]" its discretion "so that the remedial purpose of the [Declaratory Judgment Act] may be well served."[97] However, even though "a trial court has discretion in determining whether to entertain a declaratory judgment action[,] [t]he court may not exercise that discretion . . . unless the action presents an 'actual controversy.'"[98]

Additionally, the Supreme Court summarized Delaware's ripeness standards in *XL Specialty Insurance Company v. WMI Liquidating Trust*:

> Generally, a dispute will be deemed ripe if "litigation sooner or later appears to be unavoidable and where the material facts are static." Conversely, a dispute will be deemed not ripe where the claim is based on "uncertain and contingent events" that may not occur, or where "future events may obviate the need" for judicial intervention.[99]

The Supreme Court also stated that, "[i]n this specific insurance coverage context, the plaintiff must establish a 'reasonable likelihood' that coverage under the disputed policies will be triggered."[100] The Supreme Court further noted that Delaware "courts will decline 'to enter a declaratory judgment with respect to indemnity until there is a judgment against the party seeking it.'"[101]

---

[96] *Hoechst*, 623 A.2d at 1137 (citing *Schick Inc. v. Amalgamated Clothing & Textile Workers Union*, 533 A.2d 1235, 1239 (Del. Ch. 1987)).

[97] *Schick*, 533 A.2d at 1238; *see also* 10 *Del. C.* § 6512.

[98] *XL Specialty*, 93 A.3d at 1216 (citing *Gannett Co. v. Bd. of Managers of the Del. Criminal Justice Info. Sys.*, 840 A.2d 1232, 1237 (Del. 2003)).

[99] *Id.* at 1217-18 (citations omitted).

[100] *Id.* at 1218 (quoting *Hoechst*, 623 A.2d at 1137.

[101] *Id.* (quoting *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 872 A.2d 611, 632 (Del. Ch. 2005)).

In *XL Specialty*, the Court determined that the coverage dispute before it did not present a ripe controversy. The plaintiff sought a determination that primary and excess management liability policies with limits totaling $250 million covered a pending $500 million demand by the trust against defendant's former directors and officers arising from a transfer of assets to defendant's subsidiary bank.[102] The plaintiff's suit against the insurers for breach of contract and declaratory relief alleged that the insurers had breached their obligations under the policies "by denying coverage and failing to pay the D&Os' defense costs associated with (and by not attempting to settle)" the claim.[103]

The plaintiff was a Delaware statutory trust that was the legal successor to a bankruptcy debtor.[104] The plaintiff contended that it had causes of action against former officers and directors that would give rise to a claim for indemnification under certain insurance policies.[105] The officers and directors denied liability.[106] The plaintiff never filed suit against the officers and directors.[107] The plaintiff did file a complaint against the insurers in the Bankruptcy Court. The Bankruptcy Court dismissed the complaint.[108] Among other rulings, the Bankruptcy Court held that the declaratory judgment claim against the insurers failed to allege a justiciable actual controversy.[109] The plaintiffs then filed suit in this Court. The Court found the claims to be ripe and an appeal ensured.[110]

The Supreme Court held in *XL Specialty* that the plaintiff's coverage action was not ripe, notwithstanding the insurers' denial of coverage, because it "seeks a judicial determination that,

---

[102] *Id.* at 1211-12.
[103] *Id.* at 1215.
[104] *Id*. at 1211.
[105] *Id*. at 1212.
[106] *Id*. at 1214.
[107] *Id*. at 1212.
[108] *Id*. at 1215.
[109] *Id*.
[110] *Id*.

14

if made, would necessarily be premised on uncertain and hypothetical facts and that ultimately may never become necessary."[111] The Supreme Court explained that the trust had not yet filed suit against the D & Os and that, if it did, "the D&Os might ultimately prevail," in which case the policies at issue "might never be implicated . . . ."[112] The Supreme Court also determined that if the claim eventually resulted in a settlement or judgment against the D&Os, any coverage under the policies "would depend on" other contingencies, including the obligations imposed by "any settlement or judgment."[113] A coverage determination prior to that event "would rest on the court's predicted outcome of any litigation or settlement of the Asserted Claim—predictions that could ultimately turn out to be inaccurate."[114] The Supreme Court's conclusion that the plaintiff's claim for declaratory relief was not ripe applied equally to the plaintiff's breach of contract claims because those claims "arise out of the same controversy that is the subject of the declaratory judgment count . . . ."[115]

The Moving Insurers argue that this action is similar to *XL Specialty* and the Court should grant the Motion because the Insurers' claims are not ripe. The Court would agree except in this situation the Insurers have been sued, the *Dieckman* Action, and a determination should be made soon. The Court has reviewed the docket in the *Dieckman* Action and notes that final briefing is complete after trial. The Court of Chancery will be issuing a decision soon. This is substantially different than a case where an insured is not subject to suit.

The Court must, under the *Schick* Factors, take into consideration the legitimate interests of the Insureds in a prompt resolution, the hardship of delay, the prospect of future developments

---

[111] *Id.* at 1218.
[112] *Id.* at 1219.
[113] *Id.*
[114] *Id.*
[115] *Id.* at 1220.

15

that might affect the determination made, and the need to conserve scarce resources. [116] All of these factors weigh in favor of the Insureds. The *Dieckman* Action is close to a decision on liability. The Insurance Defendants have denied coverage but the Insureds may soon be subject to liabilities that may be insured under the Policies. The Court is at a loss how scare judicial economy would be preserved by dismissing this civil action *without prejudice* as to the Moving Insurers, have a decision come down in the *Dieckman* Action in the ninety days or so, and then have a new complaint filed renaming the Moving Insurers. In addition, this civil action will proceed. A review of the docket shows that seven Insurance Defendants have filed answers. In addition, the Court recently ruled on issues relating to personal jurisdiction as to other Insurance Defendants.

The Court understands this case to be somewhere between the situation presented in *XL Specialty* and one where a judgement/settlement has occurred. Delaware courts are to exercise jurisdiction over a case if the underlying controversy has matured to a point where judicial action is appropriate. As stated in *XL Specialty*, the underlying purpose of that principle is to conserve limited judicial resources and to avoid rendering a legally binding decision that could result in premature and possibly unsound lawmaking.[117] The Court finds the controversy presented here to be mature enough where judicial action is appropriate. Moreover, given the status of the *Dieckman* Action, the Court finds it highly unlikely that the Court will be entering judgment on indemnification under the Policies before the Insurers' rights, if any, to indemnification will have matured.

---

[116] *Hoechst*, 623 A.2d at 1137.
[117] *XL Specialty*, 93 A.3d at 1217.

16

## VI.  CONCLUSION

For the foregoing reasons, the Motion is **DENIED**.

Dated: September 28, 2020
Wilmington, Delaware


*/s/ Eric M. Davis*
Eric M. Davis, Judge

cc: File&ServeXpress