# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| 5HIGH LLC, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | C.A. No. 2022-0108-LWW |
| | ) | |
| HOWARD FEILER and AHJ&R BUSINESS DEVELOPMENT LLC, | ) | |
| | ) | |
| | ) | |
| Defendants/Counter-Plaintiffs, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| USAPPAREL WORKS LLC, | ) | |
| | ) | |
| Nominal Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted: May 13, 2022
Date Decided: August 5, 2022

Andrew L. Cole & Michael E. Fitzpatrick, COLE SCHOTZ P.C., Wilmington, Delaware; *Counsel for Plaintiff 5high LLC*

Frank E. Noyes, II, OFFIT KURMAN, P.A., Wilmington, Delaware; *Counsel for Defendants Howard Feiler and AHJ&R Business Development LLC*

**WILL, Vice Chancellor**

Howard Feiler and Lawrence Arin formed nominal defendant USApparel Works LLC in August 2021 as 50/50 members. No written agreements were created to govern the entity.

USApparel soon ran short on cash. Arin and Feiler's visions for how to address the cash flow problem diverged. The two appeared to reach an agreement in late November 2021 for each to make a small contribution. Feiler provided Arin with a check for his portion. But after a disagreement between the parties on November 30, 2021, Feiler had a change of heart.

On the morning of December 1, 2021, Feiler told Arin that he was leaving USApparel and demanded his check back. Arin agreed. Feiler then took a series of actions indicating that he had resigned. He told USApparel's employees, its key supplier, and its only customer that he was departing the business. He canceled a business credit card. And he asked USApparel's bank to remove him from its account. Since then, he has not performed any business for USApparel or made an additional capital contribution.

On December 5, 2021, Feiler asked Arin to sign an agreement memorializing the fact that Feiler was no longer a member of USApparel and addressing the parties' respective risks going forward. Arin and Feiler negotiated over the next month but were unable to reach a written agreement.

1

Plaintiff 5high LLC—an entity owned and controlled by Arin that holds his membership interest in USApparel—now seeks a declaration from this court that it is the company's sole member. Feiler and AHJ&R Business Development LLC— an entity owned and controlled by Feiler that (purportedly) held his membership interest in USApparel—assert that Feiler remains a member and advance a counterclaim seeking a declaration to that effect.

The evidence at trial establishes that Feiler withdrew as a member of USApparel on December 1, 2021. Thus, 5high is the sole member of USApparel. Judgment shall be entered for the plaintiff.

## I.    FACTUAL BACKGROUND

This case was tried on a paper record consisting of 56 exhibits including two deposition transcripts. The following facts were proven by a preponderance of the evidence or are drawn from the admitted allegations in the pleadings.[1]

### A.    USApparel Is Formed.

Nominal defendant USApparel Works LLC (the "Company") is a Delaware limited liability company that operates in the uniform manufacturing industry.[2]

---

[1] Where facts are drawn from exhibits jointly submitted by the parties at trial, they are referred to according to the numbers provided on the parties' joint exhibit list (cited as "JX __"). Deposition transcripts are cited as "[Name] Dep." The affidavit of Lawrence Arin is cited as "Arin Aff."

[2] Answer to Verified Compl. for Decl. Relief with Countercl. ("Answer") ¶ 9.

Defendant Howard Feiler and non-party Lawrence Arin formed USApparel on August 11, 2021 by filing a certificate of formation with the Delaware Secretary of State.[3] Arin and Feiler agreed that plaintiff 5high LLC—an entity owned and managed by Arin—and Feiler would be 50/50 members of USApparel.[4] USApparel did not have (and does not have) a written limited liability company agreement.[5]

Feiler and Arin ran the operations of the Company as equal partners. They collectively invested over $100,000 in USApparel after its formation through two tranches of equal capital contributions of $25,000.[6] Neither received compensation from the Company for their services at that time.[7] But the Company, which is headquartered in New Jersey, reimbursed Feiler—an Indiana resident—for his travel and other business expenses.[8]

---

[3] *Id.* ¶ 7.

[4] *Id.* ¶ 11.

[5] *Id.* ¶ 10; Arin Dep. 9.

[6] Answer ¶ 8; Feiler Dep. 82-83. Feiler lent Arin the second $25,000 contribution. Feiler Dep. 83.

[7] *See id.* at 81.

[8] *See* JX 2; Feiler Dep. 13, 17; Arin Dep. 46.

Feiler formed defendant AHJ&R Business Development LLC on November 9, 2021 for the purpose of holding his interest in USApparel.[9]  Feiler did not inform Arin that he intended to transfer his membership interest in USApparel to AHJ&R.[10]

## B.    USApparel Operates at a Loss.

From its inception through at least November 30, 2021, USApparel operated at a loss and faced significant cash flow issues.[11]  Arin and Feiler agreed that the Company would require additional capital to meet its funding needs but disagreed on where that capital should come from.  Feiler believed that they should each invest an additional $25,000.[12]  Arin advocated for a smaller investment and felt that the Company should cut costs by decreasing the amount it reimbursed Feiler for travel expenses.[13]

On November 23, 2021, Feiler emailed Arin a list of ways that he believed the Company could raise cash.[14]  Feiler wrote, "the last thing I want to do is walk

---

[9] *See* JX 9; Feiler Dep. 64-65.

[10] Arin Aff. ¶ 2.

[11] *See* Answer ¶ 12; JX 9; JX 10; JX 32; Feiler Dep. 33, 82.

[12] See JX 11; JX 23; Feiler Dep. 31.

[13] *See* JX 11; JX 23.

[14] JX 11.

away from [the Company, but] [a]t some point that may happen[] if we can't work this out."[15] He asked that the two plan for "that scenario."[16]

By November 30, 2021, USApparel had $700 remaining in its bank account.[17]

Around that time, Arin and Feiler reached an agreement that each would invest an additional $9,000 into the Company.[18] Feiler provided Arin with a signed check for that amount on November 30.[19] But that night, Feiler and Arin got into a heated argument after Arin again suggested that the Company should stop reimbursing Feiler for his travel expenses.[20]

## C. Feiler Leaves the Company.

On the morning of December 1, 2021, Feiler informed Arin that he no longer wished to be involved with USApparel.[21] Feiler also asked Arin to return the $9,000 check he had given him the day before.[22] Arin did not object and returned Feiler's check.[23]

---

[15] *Id.*

[16] *Id.*

[17] Arin Dep. 58.

[18] *See* Answer ¶ 15.

[19] JX 14; Arin Dep. 56.

[20] Feiler Dep. 12-13, 31; *see* Arin Dep. 56-58.

[21] Feiler Dep. 12-13, 18; Arin Aff. ¶ 6.

[22] Feiler Dep. 18.

[23] *See id.* at 14; Arin Aff. ¶ 7.

After his conversation with Arin, Feiler moved forward with his decision to leave the Company. Feiler took the following actions on December 1, 2021:

- He emailed several individuals at Fechheimer (USApparel's sole customer) to "inform [them] that as of 12/01/21 [he was] leaving USApparel Works LLC to pursue other opportunities" and that "Lawrence Arin [was] taking over as the sole managing partner."[24]

- He sent a similar email to Joe Seickel of Seickel & Sons (one of USApparel's principal suppliers), assuring Seickel that Arin would address a balance due on certain equipment.[25]

- He told personnel at USApparel's factory that he was leaving and bid them goodbye.[26]

- He canceled an American Express corporate card and asked Arin to cut up the card.[27]

- He contacted USApparel's bank to have his name removed from the Company's account.[28]

As of that date, Feiler ceased to perform services or contribute capital to the Company.[29] Arin alone has continued to operate USApparel.[30]

---

[24] JX 15; *see* Answer ¶ 20.

[25] JX 17; *see* Answer ¶ 19.

[26] Feiler Dep. 45-46.

[27] JX 19; JX 20; Feiler Dep. 20-23. Arin cut up the card as requested. *See* Feiler Dep. 20-23.

[28] Answer ¶ 21; Feiler Dep. 18. Arin subsequently went to the bank and signed the appropriate paperwork so that Feiler could be removed from the account. Arin Dep. 104-05.

[29] *See* Answer ¶ 17; Feiler Dep. 17, 21-25.

[30] Arin Aff. ¶¶ 8-9.

### D.    Feiler Prepares a "Dissolution Agreement."

On Saturday December 4, 2021, Feiler emailed Arin to say that he would "be working on the partnership dissolution agreement effective 12/01 and should have an outline for [Arin's] approval by Sunday."[31]

The next day, Feiler sent Arin a document entitled "USApparel Works LLC Partnership Dissolution Agreement" (the "Draft Dissolution Agreement").[32] The cover email stated, "I am attaching a dissolution agreement for your perusal. Please let me know if you want to add or change anything. I will try and finish the rest tomorrow."[33]

Feiler had downloaded the template for the Draft Dissolution Agreement from LegalZoom.[34] The draft as edited explained that Arin and Feiler had entered into a partnership "under the name USApparel Works LLC."[35] It stated that "the partners hereby agree that effective 11/30/2021 the partnership shall dissolve."[36] The document (albeit inconsistently with the prior statement) provided that Arin would be the "sole owner and operator of USApparel Works LLC, after 11/30/2021" and

---

[31] JX 20.

[32] JX 21.

[33] *Id.*

[34] Feiler Dep. 25.

[35] JX 21.

[36] *Id.*

could "continue to transact business and incur any obligations on behalf of himself."[37] The draft further provided that if Arin decided to cease operating USApparel, Feiler would have the option of taking over sole ownership of the Company.[38]

Arin told Feiler in an email later that day that the Draft Dissolution Agreement "seem[ed] to capture the essence of [their] discussions."[39] Arin asked Feiler to send a final draft of the agreement the next day and suggested that they "may have to get some professional help . . . to make sure [they were] tying up the loose ends properly."[40] Feiler acknowledged that "the legalese is probably incorrect" and that he was simply attempting "to get the gist of [their] agreement down on paper so that there [wa]s no misunderstanding."[41]

On December 6, 2021, Feiler emailed Arin a revised version of the Draft Dissolution Agreement.[42] The cover email explained that he was attaching "a finished partnership dissolution agreement."[43] He suggested that they should each

---

[37] *Id.*

[38] *Id.*

[39] JX 22.

[40] *Id.*

[41] JX 25.

[42] JX 24.

[43] *Id.*

8

"hire a lawyer to check" the document but that it "cover[ed] the gist of [their] agreement."[44]

The primary terms of the "finished" document were consistent with the first draft. Both provided that the "partnership" dissolved "effective 11/30/2021," that Arin would continue as the "sole owner and operator" of the Company "after 11/30/2021," and that Feiler would have the option to take over if Arin decided to cease operations.[45] Both versions of the Draft Dissolution Agreement contemplated that Delaware law would apply.

### E. Discussions Continue.

On December 6, 2021, Feiler sent Arin an email containing a proposed message to "colleagues [he] made while with USApparel."[46] The draft email stated that Feiler wished to explain "why [he] left US Apparel Works so abruptly" and that he and Arin had agreed "to move forward individually" with Arin taking over "as sole owner and operator of US Apparel Works LLC."[47] After the two disagreed on whether it was appropriate for Feiler to send the email, they discussed how to move

---

[44] *Id.*

[45] *Id.*

[46] JX 26.

[47] *Id.*

forward.[48]   Arin offered that they should "make a separation agreement that is mutually acceptable even if not perfect."  He wrote:

> We already agreed that you will be repaid the 25k loan and you have a note making that clear.  We agreed that your T&E would be reimbursed as soon as the company can afford it.  We agreed that the machines are owned 50/50 and would not be included in any equity sale without your permission.  We agreed that should I decide not to move forward, you would have the option to do so.[49]

## F.  Feiler Proposes an "Assignment Agreement."

On December 7, 2021, Feiler contacted an attorney asking for advice "to dissolve this partnership and rid myself of any obligations [Arin] might incur going forward."[50]

After speaking with an attorney, Feiler informed Arin that he wished to pursue a different type of agreement than he had originally proposed.[51]  On December 9, 2021, Feiler sent Arin an email stating:

> I believe the best way forward to us is for me to sign over my interest in USApparel Works LLC.  This will alleviate any future liability concerns I have and will allow you to run the company unfettered, with no interference, as you see fit.  If you agree to this[,] I will have a lawyer draw up

---

[48] *See* JX 23; JX 27.

[49] JX 27.

[50] JX 28.

[51] *See* JX 28; JX 30.

the papers, at my expense, and you can have your attorney approve it.[52]

Later that day, Feiler sent Arin a draft "Assignment of Limited Liability Interest Agreement" (the "Draft Assignment Agreement").[53] Section 2 of the Draft Assignment Agreement contemplated that Feiler would assign his interest in USApparel to Arin.[54] Section 5 stated that USApparel owed Feiler $3,268.01 in travel and other business expenses and that Feiler would be reimbursed when the Company hit certain manufacturing volume thresholds.[55] Section 6 provided that USApparel and Arin would indemnify Feiler against any liabilities asserted by a third party against Feiler in connection with USApparel.[56] And Section 10 stated that the Draft Assignment Agreement was governed by Indiana law and contained an Indiana forum selection provision.[57]

On December 12, 2022, Arin told Feiler by email that he agreed with the plan generally.[58] But Arin expressed concern with certain specific terms of the Draft

---

[52] JX 30.

[53] JX 32.

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *Id.*

[58] JX 35.

Assignment Agreement.[59]  For example, Arin thought that the Indiana choice of law and forum provisions were "unusual" because USApparel was a Delaware entity.[60] Arin also noted that they had "already agreed to the commercial aspects of how to separate" and "that [Feiler] w[ould] be absolved of any responsibility for the [C]ompany's obligations as of [November 30, 2021]."[61]  Arin concluded by saying that they "would need to work with [Feiler's] attorney to have [that prior understanding] articulated clearly."[62]

On December 13, 2021, a lawyer representing Feiler sent an email to Arin stating that "based on [Arin's December 12, 2021 email], Mr. Feiler [was] revoking his offer to convey his interest in [USApparel] to [Arin]."[63]  The email explained that "Feiler would consider making another offer provided either [Arin] or [USApparel]" paid Feiler "[$]3,268.01 in travel and other business expenses immediately."[64]  That same day, Feiler wrote to Arin, "You now have a choice.  Pay the money for my [travel and expenses], as agreed, immediately.  Indemnify me

---

[59] *Id.*  Arin seems to have believed that Feiler wanted him to sign both the Draft Dissolution Agreement and the Draft Assignment Agreement when he sent the December 12, 2022 email.  *Id.*  It appears from the record that Feiler only intended for Arin to sign the Draft Assignment Agreement.  *See* JX 30, JX 32, JX 35.

[60] JX 35.

[61] *Id.*

[62] *Id.*

[63] JX 38.

[64] *Id.*

12

from any liability concerning USApparel, after 11/30/2021 as we agreed[,] or we can continue to escalate this agreement into court."[65]

Between December 13, 2021 and early January 2022, Arin and Feiler continued to discuss entering into a written agreement based on the Draft Dissolution Agreement and Draft Assignment Agreement.[66] At one point, they discussed Feiler rejoining the Company as a "silent partner."[67] But those talks did not lead to an executed contract.

Arin continues to operate the Company, as he has done since December 1, 2021.[68] 5high continues to contribute capital to USApparel as needed.[69]

### G. Litigation Ensues.

On January 6 and 7, 2022, Feiler and his counsel sent the Company separate purported demands for books and records pursuant to Section 18-305 of the Delaware Limited Liability Company Act (the "LLC Act").[70] On January 10, Arin's counsel denied Feiler's demand on the ground that Feiler was not a member of the

---

[65] JX 39.

[66] *See* JXs 39-47, 49-52.

[67] JX 51.

[68] Arin Aff. ¶ 8.

[69] *Id.* ¶ 9.

[70] Answer ¶¶ 32-33.

Company.[71]  On January 13, Feiler's counsel sent a letter to Arin asserting that Feiler remained a 50% member of USApparel.[72]

5high filed a complaint against Feiler in this court on January 31, 2022.[73]  The complaint advances a single count for declaratory relief, seeking a declaration that "Feiler resigned from all roles with USApparel, including as a member and as a manager, effective as of November 30, 2021, and that 5high is the sole member of USApparel."[74]  AHJ&R was added as a defendant on February 16, 2022.[75]

Feiler answered the complaint and filed a counterclaim against 5high on February 25, 2022, adding AHJ&R as a counter-plaintiff.[76]  The counterclaim is styled as one for "Declaratory Judgment, Accounting and Pro Rata Distribution of Profits."[77]  Feiler and AHJ&R assert that they are entitled to a declaration that "AHJ&R and/or Howard Feiler remains a 50% member of USApparel and remains a Managing Member along with 5high pursuant to 6 *Del. C.* §18-402."[78]  The counterclaim also asks the court to order an equitable accounting of USApparel's

---

[71] *Id.* ¶ 34.

[72] *Id.* ¶ 35.

[73] Dkt. 1.

[74] *Id.*

[75] Dkt. 9.

[76] Dkt. 16.

[77] Answer at 21.

[78] Dkt. 16.

finances to determine if the counter-plaintiffs are entitled to a distribution of USApparel's profits.[79]

A trial on a paper record was held on May 13, 2022.[80] Feiler and AHJ&R did not press their request for an equitable accounting or a distribution of USApparel's profits in briefing or at trial.

## II. LEGAL ANALYSIS

The plaintiff and counter-plaintiffs bear the burden of proving their respective claim and counterclaim by a preponderance of the evidence.[81] "Proof by a preponderance of the evidence means proof that something is more likely than not."[82]

Under the Delaware Declaratory Judgment Act, Delaware courts "have power to declare rights, status and other legal relations whether or not further relief is or could be claimed"[83] so long as an "actual controversy" exists between the parties.[84]

---

[79] *Id.*

[80] Dkt. 39.

[81] *See Osborn v. Kemp*, 2009 WL 2586783, at *4 (Del. Ch. Aug. 20, 2009) ("Typically, in a post-trial opinion, the court evaluates the parties' claims using a preponderance of the evidence standard."), *aff'd*, 991 A.2d 1153 (Del. 2010).

[82] *Revolution Retail Sys., v. Sentinel Techs., Inc.*, 2015 WL 6611601, at *9 (Del. Ch. Oct. 30, 2015).

[83] 10 *Del. C.* § 6501.

[84] *Stroud v. Milliken Enters.*, 552 A.2d 476, 479-80 (Del. 1989) (explaining that an "actual controversy" exists if it "involve[s] the rights or other legal relations of the party seeking declaratory relief . . . [is] a controversy in which the claim of right or other legal interest is

An actual controversy exists in this case because the parties dispute whether Feiler (or AHJ&R) is a member of USApparel based on events that occurred in December 2021.

5high contends that it is entitled to a declaration that it is the sole member of USApparel for two reasons. First, 5high asserts that Feiler resigned and withdrew as a member of USApparel on December 1, 2021.[85] In the alternative, 5high maintains that Arin and Feiler agreed to all material terms of an agreement for Feiler to withdraw or transfer his interest to 5high.[86]

The defendants, for their part, contend that they are entitled to a declaration that Feiler (or AHJ&R) remains a 50% member of USApparel. The defendants argue that Feiler could not have resigned as a member of USApparel because the Company did not have a written limited liability company agreement and the parties'

---

asserted against one who has an interest in contesting the claim . . . [is] between parties whose interests are real and adverse . . . [and] the issue involved in the controversy [is] ripe for judicial determination" (quoting *Rollins Intern. v. Int'l Hydronics Corp.*, 303 A.2d 660, 662-63 (Del. 1973))).

[85] Pl.'s Opening Br. 15-19 (Dkt. 29). It is unclear from the record whether Feiler had transferred his membership interest in USApparel to AHJ&R. *See supra* notes 9-10, 77. The parties' briefs speak in terms of whether Feiler (not AHJ&R) resigned from USApparel on December 1, 2021. *See* Pl.'s Opening Br. 15; Defs.' Answering Br. 17-18 (Dkt. 34). But if Feiler transferred his membership interest to AHJ&R, the question before the court would technically be whether AHJ&R ceased to be a member of USApparel on December 1, 2021. My analysis will largely follow the briefs and speak in terms of whether Feiler resigned from USApparel. But my conclusions would not change if Feiler had, in fact, transferred his membership interest to AHJ&R. The only difference would be that AHJ&R, rather than Feiler, would be the resigning party.

[86] Pl.'s Opening Br. 19-24.

actions did not create an implied agreement.[87]  They also maintain that the parties never reached a binding agreement for Feiler to withdraw or transfer his units to 5high.[88]

For the reasons explained below, I find that Feiler (or AHJ&R) left USApparel on December 1, 2021.[89]  Accordingly, the plaintiff is entitled to a declaration that 5high is the sole member of USApparel.

## A.    Feiler Withdrew from USApparel on December 1, 2021.

The central question before the court is whether Feiler resigned from and withdrew as a member of USApparel on December 1, 2021.  Feiler argues that he did not resign but merely expressed an intention to leave.  He also claims that his attempt to leave was unsuccessful because he and Arin understood that the terms of Feiler's departure would be in writing but no final agreement was reached.  Both arguments fail.

### 1.    Feiler and Arin Reached an Implied Agreement on Withdrawal.

The evidence demonstrates that Feiler withdrew from USApparel on December 1, 2021 pursuant to an implied agreement.  "A member may resign from a [Delaware] limited liability company only at the time or upon the happening of

---

[87] Defs.' Answering Br. 14-18.

[88] *Id.* at 10-14.

[89] Because I find that Feiler (or AHJ&R) resigned from USApparel, I do not address the plaintiff's alternative argument.

events specified in a limited liability company agreement and in accordance with the limited liability company agreement."[90]  An agreement governing a limited liability company "as to the affairs of [the] limited liability company and the conduct of its business" may be "written, oral, or implied."[91]  In the absence of a limited liability company agreement (or if the agreement is silent), a member must operate under the default rules in the LLC Act and "may not withdraw prior to the dissolution and winding up of the entity."[92]

"An implied contract is one inferred from the conduct of the parties, though not expressed in words."[93]  "The legal effect of [express and implied contracts] are identical; the distinction is based on the way in which mutual assent is manifested."[94]  "In determining whether the parties' conduct implies a contract in fact, their conduct is evaluated from the perspective of a reasonable person, considering all of the attendant circumstances."[95]  "A party's subjective intent or belief, does not

---

[90] 6 *Del. C.* § 18-603.

[91] 6 *Del. C.* § 18-101(9).

[92] *Levey v. Brownstone Asset Mgmt., LP*, 2014 WL 3811237, at *7 (Del. Ch. Aug. 1, 2014) (quoting 6 *Del. C.* § 18-603).

[93] *Cap. Mgmt. Co. v. Brown*, 813 A.2d 1094, 1098 (Del. 2002) (quoting 17A Am. Jur. 2d. § 12 (1991)); *P.C. Connection, Inc. v. Synygy Ltd.*, 2021 WL 57016, at *19 (Del. Ch. Jan. 7, 2021) ("An implied contract is formed through the parties' conduct.").

[94] *P.C. Connection*, 2021 WL 57016, at *19 (quoting 1 Williston on Contracts § 1:5 (4th ed. 1993)).

[95] 1 Williston on Contracts § 1:5 (4th ed. 2022).

determine whether an implied contract exists. The failure to object may be treated as acceptance."[96]

Here, the evidence establishes that Feiler manifested an intent to resign as a member of USApparel on December 1, 2021. That day, Feiler informed Arin that he was leaving the Company and asked that his $9,000 capital contribution check be returned. Feiler informed several of USApparel's employees, a major supplier, and its sole customer that he was leaving the Company as of December 1. He canceled a business credit card and asked to be removed from the Company's bank account.[97] He was explicit that Arin would remain as the "sole managing partner" and owner of the Company.[98]

The defendants argue that Feiler did not "resign" because he never used that term in his correspondence.[99] But no magic words are required. Simply put, Feiler left the Company. He repeatedly expressed his intention to leave USApparel entirely—as evidenced by his actions and the language of his communications. The

---

[96] *Levey*, 2014 WL 3811237, at *10; *see* Restatement (Second) of Contracts § 19(1) (1981) ("The manifestation of assent may be made wholly or partly by written or spoken words or by other acts or by failure to act.").

[97] *See supra* at 26-27.

[98] *E.g.*, JX 15; JX 17.

[99] Defs.' Answering Br. 17.

only reasonable conclusion an objective observer could draw is that Feiler was severing ties with the Company.

The evidence in this case also establishes that 5high (through Arin) manifested its acceptance of Feiler's withdrawal. Arin made no effort to stop Feiler from exiting USApparel. Arin returned Feiler's $9,000 capital contribution check, requested that the Company's bank remove Feiler from its account (and signed paperwork to that effect), and cut up Feiler's corporate credit card—all at Feiler's request.[100]

The facts of this case bear a resemblance to those in *Levey v. Brownstone Asset Management, LP*.[101] There, the court found that a member of a limited liability company without a written limited liability company agreement had withdrawn pursuant to an implied agreement. The member had told another member he was quitting, provided a resignation letter, cut up his corporate credit card and building access card, and turned over his office keys.[102] The other member accepted the departing member's resignation.[103]

Here, as in *Levey*, the departing member evidenced an intent to withdraw through his conduct and the remaining member manifested his acceptance of that

---

[100] *See supra* at 22, 26-27.

[101] 2014 WL 3811237.

[102] *Id.* at *4.

[103] *Id.* at *8.

withdrawal. That implied agreement "modified the default provisions in the [LLC Act] that otherwise prevent a . . . member from withdrawing before dissolution and winding up."[104]

2.    The Parties' Subsequent Negotiations Do Not Alter Their Implied Agreement.

The defendants also argue that no agreement was formed allowing Feiler to resign and withdraw from the Company because the parties subsequently undertook negotiations on written agreements that were never finalized. But the fact that Arin and Feiler wished to memorialize Feiler's departure from the Company in a written agreement does not mean that an implied agreement had not already been reached. The evidence demonstrates that Feiler considered himself separated from the Company after November 30, 2021 and that the parties were attempting to document the specifics of what had already occurred and address their respective risks.

The parties did not understand what was legally required for Feiler to leave USApparel. Their desire to negotiate a written agreement was an attempt to "t[ie] up the loose ends properly."[105] Feiler did not want to be subject to liabilities related to the Company. Arin sought to eliminate the risk that Feiler would later claim—as he is now—that he still held a membership interest in the Company. Their

---

[104] *Id.* at *10.

[105] JX 22; *see also* JX 28; JX 30.

negotiations concerned the formalities of whether the Draft Dissolution Agreement or Draft Assignment Agreement was the proper course to protect themselves.

There was no question, however, that Feiler had resigned from USApparel. Feiler did not assert that he remained a member of USApparel until well into the parties' negotiations—which was inconsistent with his prior statements and actions. And Arin consistently maintained that Feiler had left USApparel on December 1. That was in the past—it had already been agreed to by the parties. Their implied agreement did not provide that Feiler remained a member until they finalized a written contract.

Because I have found that an implied agreement was reached on the matter of Feiler's resignation and withdrawal, I need not decide whether the Draft Dissolution Agreement or Draft Assignment Agreement evidenced the parties' agreement on all material terms.

### 3. The Potential Value of Feiler's Membership Interests.

Pursuant to the LLC Act, a member who resigns from a Delaware limited liability company is entitled to receive "the fair value of such member's limited liability company interest as of the date of the resignation based upon such member's

right to share in distributions from the limited liability company" unless a limited liability company agreement provides otherwise.[106]

At trial, the defendants' counsel argued that the parties never agreed on a return of Feiler's equity in the Company.[107] Yet they did not ask that the court award Feiler the value of his interests in the event that the court found he was no longer a member. Neither party briefed this issue.

Given the LLC Act's default rule entitling a resigning member of an LLC to a distribution equal to the fair market value of the member's interest, the lack of evidence that the parties reached an implied agreement that would modify the default rule, and the parties' failure to brief the issue, this decision should not be read to indicate that Feiler is barred from later asserting that he is entitled to some value for his interests in USApparel as of the date of his resignation.

## III. CONCLUSION

For the reasons stated above, 5high is entitled to a declaration that Feiler resigned from and withdrew as a member of USApparel on December 1, 2021 and

---

[106] 6 *Del. C.* § 18-604; *Levey*, 2014 WL 3811237, at *11 ("The statutory calculation is not limited to the value of his capital account, but rather should represent the fair value of the interest as of the date of withdrawal based upon the partner's right to share in distributions from the entity.").

[107] Trial Tr. 34-35.

that 5high is the sole member of USApparel. Feiler's (or AHJ&R's) request for a declaration that he remains a member of USApparel is denied.[108]

The parties are directed to submit an agreed-upon form of final order to implement this decision.

---

[108] As noted above, the defendants' counterclaim sought an equitable accounting of finances for USApparel and a distribution to the defendants of their pro rata share of USApparel profits since December 1, 2021. *See* Answer at 24. The defendants made no mention of this request in their pretrial briefing or during trial. To the extent that request for relief is not mooted by my finding that 5high is the sole member of the Company, it has been waived. "Issues not briefed are deemed waived." *Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999).